# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*People v. Tate*, 2012 IL 112214

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DOUGLAS TATE, Appellant. |
| Docket No. | 112214 |
| Filed | November 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A postconviction claim that trial counsel was ineffective in failing to call witnesses should not have been summarily dismissed where it was arguable that there had been both substandard professional performance and prejudice; and retention of private counsel at the first stage of postconviction did not call for a higher standard. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Marcus R. Salone, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Daniel S. Alexander, of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michele Grimaldi Stein and Joseph A. Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner, Douglas Tate, filed a postconviction petition in the circuit court of Cook County. The appellate court affirmed the circuit court's summary dismissal. No. 1-09-2379 (unpublished order under Supreme Court Rule 23). We granted leave to appeal, and now reverse the judgment of the appellate court and remand to the circuit court for further proceedings.

¶ 2 I. BACKGROUND

¶ 3 Tate's conviction arose from the August 2001 murder of Maurice Wesley in Chicago. Tate's bench trial, which began in June 2005, presented the testimony of four eyewitnesses who identified him as the shooter. Police found four spent shell casings at the scene of the crime, but no gun. The parties stipulated that the casings yielded no latent fingerprint impressions suitable for comparison. The medical examiner testified Wesley died of multiple gunshot wounds. His wounds were consistent with eyewitness accounts of the manner in which he was shot. The trial judge found Tate guilty of first degree murder and aggravated discharge of a firearm, and sentenced him to 50 years' imprisonment. The appellate court affirmed. *People v. Tate*, No. 1-07-1094 (2008) (unpublished order under Supreme Court Rule 23).

¶ 4 In his postconviction petition, which was filed through private counsel, Tate alleged his trial counsel was ineffective for failing to call four witnesses, two of whom Tate claimed could establish an alibi. Tate also alleged actual innocence, based on the same four affidavits. Attached to the postconviction petition were Tate's own affidavit; the affidavit of Tina Louise Tate (Tina), his girlfriend at the time of the shooting and, since July 2006, his wife; the affidavit of Tina's cousin and roommate, Marilyn Pass; and the affidavits of occurrence witnesses Charles Hebron and Shevell Wilson.

¶ 5 In his affidavit, Tate averred that he spent the night before the shooting with Tina and

remained at her apartment until 10:00 or 11:00 the following night. The affidavits of Tina and Pass provided support for this alibi: each averred Tate spent that night at Tina's apartment and did not leave until 10:00 or 11:00 the next night. Wilson stated in his affidavit that at the time of the shooting, he did not see Tate anywhere near the corner where the incident occurred. Hebron's affidavit averred that he was five feet from the victim at the time of the shooting, he witnessed the shooting, he had known Tate for years, and he was sure Tate was not the shooter.

¶ 6     The circuit court summarily dismissed Tate's postconviction petition without comment. The appellate court affirmed. No. 1-09-2379 (unpublished order under Supreme Court Rule 23).

¶ 7                                            II. ANALYSIS

¶ 8     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Peeples*, 205 Ill. 2d 480, 509 (2002). A postconviction action is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings. Thus, issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised but were not are forfeited. An action for postconviction relief is initiated by the person under criminal sentence, who files a petition in the circuit court in which the original proceeding took place. As a result, most such petitions are filed *pro se* by persons who are incarcerated and lack the means to hire their own attorney.

¶ 9     In a noncapital case, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the petition, taking the allegations as true, and determine whether " 'the petition is frivolous or is patently without merit.' " *Hodges*, 234 Ill. 2d at 10 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2006)). A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Hodges*, 234 Ill. 2d at 11-12. This first stage in the proceeding allows the circuit court "to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit." *People v. Rivera*, 198 Ill. 2d 364, 373 (2001). Because most petitions are drafted at this stage by defendants with little legal knowledge or training, this court views the threshold for survival as low. At this initial stage of the proceeding, there is no involvement by the State.

¶ 10    If the circuit court does not dismiss the petition as "frivolous or *** patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2008)), the petition advances to the second stage, where counsel may be appointed to an indigent defendant (725 ILCS 5/122-4 (West 2008)), and where the State, as respondent, enters the litigation (725 ILCS 5/122-5 (West 2008)). It is at this point, not the first stage, where the postconviction petition can be said to be at issue, with both sides engaged and represented by counsel. See 725 ILCS 5/122-4, 122-5, 122-6 (West 2008). At this second stage, the circuit court must determine whether the petition and any accompanying documentation make "a substantial showing of a constitutional violation."

*People v. Edwards*, 197 Ill. 2d 239, 246 (2001) (citing *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). If no such showing is made, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246. If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. *Id.*; 725 ILCS 5/122-6 (West 2008). The summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 11 In the case at bar, the State notes that Tate's petition was prepared by privately retained counsel, and argues that, as such, it must make a "substantial showing of a constitutional violation" (*Edwards*, 197 Ill. 2d at 246), as opposed to simply clearing the "frivolous or *** patently without merit" hurdle.

¶ 12 The State's argument is unpersuasive. Under the State's proposal, a first-stage postconviction petition prepared by an attorney would essentially be required to make a substantial showing of a constitutional violation, which is the standard at the second stage, *after* the State has entered the litigation. This second-stage standard is inappropriate at the first stage, where the State has no involvement (725 ILCS 5/122-5 (West 2008)) and where the petition cannot be said to be at issue. The State nevertheless argues that because some first-stage petitions are prepared by counsel and others are *pro se*, both the lower standard (for *pro se* petitions) and the higher standard (for attorney-prepared petitions) must apply at the first stage of the proceeding. The State thus would add complexity to a stage where, as noted, the court acts "strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit" (*Rivera*, 198 Ill. 2d at 373). In the process, the State would necessarily alter the three-stage postconviction structure set forth in the Act. 725 ILCS 5/122-2.1(a)(2), (b) (West 2008). We decline the State's invitation to take this step.

¶ 13 Before we address Tate's contentions, we first dispose of the State's assertion that Tate's ineffective assistance claims are forfeited because he did not include them in his posttrial motion.

¶ 14 As noted, Tate alleged his trial counsel was ineffective for failing to call four witnesses whose affidavits were attached to his petition. Tate's ineffective-assistance claims thus are based on what trial counsel should have done, not on what counsel did. An ineffective assistance claim based on what the record discloses counsel did, in fact, do is subject to the usual procedural default rule. *People v. Erickson*, 161 Ill. 2d 82, 88 (1994). "But a claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation." *Id.* Thus, this court has "repeatedly noted that a default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense." *People v. West*, 187 Ill. 2d 418, 427 (1999).

¶ 15 In the case at bar, none of the four witnesses were called to testify. As a result of counsel's allegedly deficient representation, the contents of their affidavits could not have been included in the record. In this situation, forfeiture does not preclude Tate's claims that counsel was ineffective for failing to call these witnesses, even though they were not included in Tate's posttrial motion. *Cf. Erickson*, 161 Ill. 2d at 86-88 (declining to excuse

procedural default of claim that counsel was ineffective for failing to show witness lied about holding degree in psychology, where witness admitted on cross-examination that he was not a psychologist).

¶ 16    Before this court, Tate argues the circuit court erred in summarily dismissing his postconviction petition because he presented an arguable claim of ineffective assistance of counsel. In other words, Tate claims that his petition was not frivolous or patently without merit and should have been advanced to the second stage and docketed for further consideration, and the State ordered to answer or otherwise respond. We agree.

¶ 17    Tate alleged his trial counsel was ineffective for failing to investigate and call the two alibi witnesses and two occurrence witnesses whose affidavits were attached to the petition. Tate also alleged he was actually innocent, based on the same four affidavits.

¶ 18    In evaluating Tate's claim of ineffective assistance of counsel, the appellate court below expressly referred to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In describing that test, the court stated: "To *demonstrate* ineffective assistance of trial counsel, the defendant must allege facts *showing* that counsel's performance was objectively unreasonable and resulted in prejudice to defendant." (Emphases added.) No. 1-09-2379 (unpublished order under Supreme Court Rule 23). Thus, to meet the *Strickland* test, the defendant must *demonstrate* ineffective assistance by *showing* that his counsel's performance was deficient and that this deficient performance prejudiced the defense. The State describes the *Strickland* test in similar terms, adding: "Both prongs of *Strickland* must be satisfied to *prove* a claim of ineffective assistance of counsel." (Emphasis added.)

¶ 19    Both the State and the appellate court correctly describe the *Strickland* test as it would be applied at the second stage of postconviction proceedings, where the petitioner must make a "substantial showing of a constitutional violation" (*Hodges*, 234 Ill. 2d at 11 n.3) in order to avoid dismissal. At that stage, it is appropriate to require the petitioner to "demonstrate" or "prove" ineffective assistance by "showing" that counsel's performance was deficient and that it prejudiced the defense. However, as we have pointed out, this appeal is not from a second-stage dismissal; it is from a first-stage summary dismissal. A different, more lenient formulation applies at the first stage, as *Hodges* clearly indicated. There, we began by stating the *Strickland* standard as applied at the second stage: "To *prevail* on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." (Emphasis added.) *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 687-88). We next stated, by contrast: "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases added.) *Id*.

¶ 20    This "arguable" *Strickland* test demonstrates that first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard than are such petitions at the second stage of the proceeding. The same is true for all other first-stage postconviction petitions, which may be summarily dismissed only if they have "no arguable basis either in law or in fact." *Id*. at 11-12.

¶ 21 The State argues that Tate's claims regarding trial counsel's failure to present the alibi testimony of Tina and Pass, and the occurrence testimony of Hebron and Wilson, have no arguable basis in law or in fact. The State contends, for example, that Tate's trial counsel had a sound strategic reason for not calling Hebron. According to the State, Hebron's purported testimony had the potential to hurt Tate more than it would have helped. The State focuses on Hebron's "admission in his affidavit that he was present for the shooting." Hebron's testimony, the State continues, would have bolstered the credibility of the State's eyewitnesses, three of whom identified Hebron as having been present at the shooting. "By affirming the accuracy of their observations of him as having been present, Hebron's testimony would have corroborated the correctness of their observations and the accuracy of their identification of [Tate] as the shooter."

¶ 22 This argument is more appropriate to the second stage of postconviction proceedings, where both parties are represented by counsel, and where the petitioner's burden is to make a substantial showing of a constitutional violation. The State's strategy argument is inappropriate for the first stage, where the test is whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced.

¶ 23 We conclude that the affidavits attached to Tate's postconviction petition meet the "arguable" *Strickland* test for first-stage petitions. Hebron's affidavit is illustrative. In it, he averred that he was five feet from the victim at the time of the shooting, he witnessed the shooting, he had known Tate for years, and he was "sure that the shooter was not Douglas Tate."

¶ 24 The State's main case against Tate consisted of the testimony of the four eyewitnesses. No murder weapon was recovered. No fingerprints or DNA linked Tate to the crime. Nor was there a confession. Moreover, while the medical examiner opined that Wesley's wounds were consistent with eyewitness accounts of the manner in which he was shot, none of the medical examiner's testimony directly linked Tate to the shooting. As Tate correctly notes, this testimony corroborated that *someone* shot Wesley, but it shed no light on the key issue of the identity of the shooter. In this context, Hebron's testimony would have provided a first-person account of the incident which directly contradicted the prior statements of the State's eyewitnesses. It is at least arguable that Tate was prejudiced by the lack of this witness, and that defense counsel's performance, or lack thereof, fell below an arguable standard of reasonableness.

¶ 25 Tate's affidavits are sufficient for his petition to advance to the second stage of postconviction proceedings. We reverse the judgment of the appellate court, which affirmed the circuit court's summary dismissal of Tate's petition, and we remand to the circuit court for further proceedings.

¶ 26 We express no opinion as to whether Tate's affidavits ultimately will support a substantial showing of a constitutional violation. That is a second-stage issue.

¶ 27 In view of our holding on this issue, we need not address Tate's argument regarding his Illinois due process claim of actual innocence.

¶ 28                              III. CONCLUSION

¶ 29        We reverse the judgment of the appellate court, which affirmed the judgment of the circuit court of Cook County. We remand to the circuit court for further proceedings.

¶ 30        Reversed and remanded.