NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190343-U

NO. 4-19-0343

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 10, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| STEPHEN M. WELLS, | ) | No. 14CF1124 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the trial court did not err by dismissing
defendant's postconviction petition at the first stage of proceedings.

¶ 2    In March 2019, defendant, Stephen M. Wells, filed a postconviction petition,
alleging the State knowingly used perjured testimony and he received ineffective assistance of
counsel where his attorney failed to raise the knowing use of perjured testimony on direct appeal.
In May 2019, the trial court summarily dismissed defendant's petition as frivolous and patently
without merit.

¶ 3    Defendant appeals, arguing the trial court erred by dismissing defendant's petition
at the first stage because the petition adequately set forth a gist of a constitutional claim.  For the
following reasons, we affirm the trial court's judgment.

¶ 4                                  I. BACKGROUND

¶ 5        In August 2014, the State charged defendant with six counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)) and one count of unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(2) (West 2014)). In February 2015, the State filed an additional charge of unlawful delivery of a controlled substance.

¶ 6        In March 2015, the matter proceeded to a jury trial. We set forth the trial evidence at length in *People v. Wells*, 2017 IL App (4th) 150506-U. Here, we summarize only the testimony relevant to defendant's postconviction petition.

¶ 7        Marshall Henry, a Champaign police officer, testified that, in May 2014, he was on patrol as part of the community action team, which focused on narcotics cases. While on patrol, Henry stopped Ashley Dawson after observing her disobey a stop sign. Henry obtained Dawson's consent to search her vehicle, and he discovered "a small crumb of what appeared to be crack cocaine on the floorboard." Dawson admitted she used cocaine and some must have dropped on the floorboard.

¶ 8        Henry further discussed Dawson's cocaine use, with the intention of recruiting her as a confidential informant. According to Henry, it was common to approach users of controlled substances to see if they would provide information about the dealer of the controlled substance. Dawson indicated she was willing to become a confidential informant and she purchased cocaine from an individual later identified as defendant.

¶ 9        Henry testified he made Dawson no promises, but he discussed what would be done about the cocaine found in her car. Henry told Dawson, "At that time, she would not be arrested for that possession of cocaine." Henry denied making any promises to Dawson about what would be done about the cocaine found in her car in the future. According to Henry, he

could have arrested Dawson at the time of the initial traffic stop for possession of cocaine. Henry testified the issue of reimbursement or payment for being a confidential source came up at a later time. Dawson ultimately conducted numerous controlled buys for which she was compensated.

¶ 10 Dawson testified she became a confidential informant after getting pulled over in May 2014. According to Dawson, Henry found cocaine in her vehicle from a prior use. Dawson told Henry she purchased the cocaine from a person nicknamed "B" who she identified as defendant. Dawson also told Henry where defendant lived. Following this discussion, Dawson agreed to be a confidential informant. Dawson testified, "My motivation was my son. I have a sixty [*sic*] month old, and I didn't want to go to jail. And so, I thought to better my life and get away from the drugs was to work as a confidential source." When asked if Henry made her any promises, Dawson stated, "No. He didn't make any promises." However, Henry later discussed the possibility of payment or reimbursement for acting as a confidential informant. According to Dawson, Henry told her that if she complied and worked with the police, "then they could help [her]."

¶ 11 Dawson admitted she wanted the police to help her and the police said they could help her. Defense counsel asked if "help" meant not putting Dawson in jail or charging her with a crime. Dawson replied, "Well, my case is still pending. I'm—I could be charged with it still." Dawson agreed she did not want that to happen and she was trying to cooperate with the police because they were the people who could make that decision. Dawson again identified her son, who was ten months old when she was stopped, as her motivation to avoid jail. According to Dawson, she had financial difficulties and was paid for acting as a confidential informant. Dawson testified she was never taken to jail after Henry found cocaine in her possession.

¶ 12        Following the close of evidence, the jury returned guilty verdicts on seven counts

of unlawful delivery of a controlled substance and one count of unlawful possession with intent

to deliver.  The trial court sentenced defendant to concurrent terms of 30 years' imprisonment

followed by 3 years' mandatory supervised release.  On direct appeal, this court concluded, in

part, the State proved defendant guilty beyond a reasonable doubt.  *Wells*, 2017 IL App (4th)

150506-U, ¶¶ 75, 88.

¶ 13        In March 2019, defendant filed a *pro se* postconviction petition.  The

postconviction petition alleged defendant was deprived of his constitutional right to a fair trial,

due process of law, and the effective assistance of counsel (1) where the State knowingly used

perjured testimony to convict defendant and (2) where appellate counsel failed to raise the

knowing use of perjured testimony on direct appeal.  Specifically, the petition alleged Henry's

testimony that no promises were made to Dawson was false.  Defendant argued Dawson's

testimony that she was motivated by the thought she would lose her child if she refused to testify,

that she received payments for acting as a confidential informant, and that the police would help

her was "a clear indication of a promise by agents of the State after they had arrested Dawson for

being in possession of cocaine."  The petition further alleged the State knew the testimony was

false and the false testimony affected the jury's judgment.

¶ 14        In May 2019, the trial court dismissed defendant's postconviction petition,

concluding defendant failed to state the gist of a constitutional claim and the petition was

frivolous and patently without merit.  The court noted defendant alleged Henry testified falsely

when he stated no promises were made to Dawson and defendant did not specify what Dawson

testified to falsely.  The court, in its written order, wrote, "[Defendant] concludes that the fact

[Dawson] believed she would receive help from the police, combined [with] the fact that she was

not subsequently prosecuted and that she kept custody of her child, constitutes evidence that both witnesses perjured themselves. [Defendant] offers no factual support for his assertion that Dawson was not prosecuted or retained custody." The court continued, writing as follows:

"In the instant case, [defendant] has failed to allege any facts to substantiate his claim that either witness lied. Even taking his unsupported claims that Dawson was not prosecuted and did not lose custody of her child as true, [defendant] does not identify any false statement made by Henry or Dawson. Instead, he relies on the conclusion that Dawson had an expectation of additional benefits, namely the dismissal of her case and keeping custody of her child. Because he claims that those events came to fruition after the trial, [defendant] urges the court to find that specific promises must have been made by Henry. [Defendant] fails to identify any evidence that the resolution of Dawson's case or custody of her child, was affected by any actions or promises made by Henry or by the police with Henry's knowledge.

Further, the matter of Dawson's expectations and wishes with respect to her pending case, her child[,] and the payment of $260 while working as an informant, were fully explored on direct and cross examination. [Defendant] has failed to identify any factual support for his claim that additional promises or benefits were conveyed to Dawson by Henry other than what was testified to at trial. [Defendant's] claim of perjury is based on nothing more

than speculation and unsubstantiated conclusions, and as such, does not warrant relief. There is no need to reach the issues of prosecutor's knowledge or materiality, because petitioner has failed to establish his claim that any of the testimony was false."

The court further rejected defendant's ineffective assistance of counsel claim, concluding any such claim must fail where the underlying claim regarding perjured testimony was meritless.

¶ 15    This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant argues the trial court erred by dismissing defendant's petition at the first stage because the petition adequately set forth a gist of a constitutional claim based on the State's knowing use of perjured testimony.

¶ 18    The Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-8 (West 2018)) provides a collateral means for a defendant to challenge a conviction or sentence for a violation of a federal or state constitutional right. *People v. Jones*, 211 Ill. 2d 140, 143, 809 N.E.2d 1233, 1236 (2004). At the first stage of postconviction proceedings, the trial court must determine, taking the allegations as true, whether the defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). A postconviction petition may be summarily dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 12, 912 N.E.2d 1204, 1209 (2009). At this stage of proceedings, the trial court acts in an administrative capacity and screens out postconviction petitions that lack legal substance or are obviously without merit. *People v. Tate*, 2012 IL 112214, ¶ 9, 980 N.E.2d 1100. The threshold for surviving first-stage proceedings is low because defendants with limited legal knowledge or training draft most

postconviction petitions. *Id.* "To survive dismissal at this initial stage, the postconviction petition 'need only present the gist of a constitutional claim,' which is 'a low threshold' that requires the petition to contain only a limited amount of detail." *People v. Harris*, 366 Ill. App. 3d 1161, 1166-67, 853 N.E.2d 912, 917 (2006) (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996)). We review *de novo* the summary dismissal of a postconviction petition. *Id.* at 1167.

¶ 19    Defendant argues his postconviction petition met the low bar for first-stage dismissal where a petition need only state the gist of a constitutional claim with an arguable basis in law or in fact. Defendant argues that "Ms. Dawson's testimony that the police agreed to help her coupled with her motivation indicates that there was some other promise made to elicit her assistance."

¶ 20    Here, Henry testified he made no promises to Dawson in exchange for her acting as a confidential informant. Henry acknowledged discussing compensation for confidential informant work. Dawson testified the police told her they could help her, and she hoped to avoid prosecution for possession of cocaine. Additionally, Dawson testified she wanted to retain custody of her child. Defendant argues that, because Dawson's hoped-for outcomes in fact came to pass, the police must have promised her those outcomes. This argument is circular and based on nothing but speculation and unsubstantiated conclusions, as the trial court correctly pointed out. Defendant raised no new factual allegations of perjury in his postconviction petition. Defendant relied entirely on facts contained within the record that were already disclosed to the jury during the trial.

¶ 21    In *People v. Olinger*, 176 Ill. 2d 326, 346, 680 N.E.2d 321, 331 (1997), a witness "testified that the *only* promise made to him in exchange for his testimony against defendant was

that he was given immunity for burglarizing the Burris residence." (Emphasis in original.) The defendant filed a postconviction petition alleging the witness was also promised a multijurisdictional deal as a result of his testimony and the State was aware of the deal. *Id.* at 347. The defendant's postconviction petition was supported by an affidavit from the witness's attorney attesting to the multijurisdictional deal. *Id.* The supreme court concluded the defendant was entitled to an evidentiary hearing on his postconviction claim that the State knowingly allowed the witness's testimony to go uncorrected. *Id.*

¶ 22 Unlike *Olinger*, defendant has raised no new factual allegations of a promise made to Dawson. Both Dawson and Henry testified no promises were made in exchange for Dawson's testimony. Although Dawson hoped she would not face prosecution, she testified at trial that the charges against her were still pending. Even taking as true defendant's factual allegations that Dawson did not end up facing prosecution or losing custody of her child, nothing in the postconviction petition suggests Henry made any sort of other promise to Dawson. The jury was fully aware of Dawson's hoped-for outcome, as she testified she hoped to avoid prosecution. Indeed, as we noted on direct appeal, "defense counsel had ample opportunity to cross-examine Dawson and the jury was aware of the fact that she was hoping to avoid charges by acting as a confidential informant and witness for the State." *Wells*, 2017 IL App (4th) 150506-U, ¶ 73.

¶ 23 Because defendant's petition failed to allege any new facts the jury did not hear at trial, defendant has failed to demonstrate even an arguable basis in fact that the State knowingly relied on perjured testimony at trial. *Hodges*, 234 Ill. 2d at 12. We conclude the trial court properly dismissed defendant's postconviction petition as frivolous and patently without merit. Accordingly, we affirm the court's judgment.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.