2021 IL App (1st) 190125-U

FIRST DIVISION
June 28, 2021

No. 1-19-0125

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 CR 16847 (02) |
| | ) | |
| KEVIN WALKER, | ) | The Honorable |
| | ) | Thomas J. Byrne, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the circuit court summarily dismissing petitioner's postconviction petition at the first stage is affirmed.

¶ 2    Petitioner, Kevin Walker, filed a postconviction petition asserting in relevant part that his trial counsel provided ineffective assistance by failing investigate a potential alibi witness. The circuit court summarily dismissed the petition at the first stage. Walker appeals. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     The following facts are relevant to understanding the issues in this appeal. A more complete recitation of the evidence presented at Walker's trial can be found in our order affirming his convictions on direct appeal. See *People v. Walker*, 2017 IL App (1st) 141036-U, ¶¶ 3-27.

¶ 5     Walker and two codefendants, Shawn Gaston and Christopher Harris, were charged with the first degree murder of Chicago police officer Alejandro Valadez and the attempted murder of Kelvin Thomas. At trial, the State presented evidence that Officer Valadez and his partner started their shift around 11 p.m. on May 31, 2009. Officer Valadez, his partner, and other officers responded to a report of possible gunfire around West 60th Street to West 61st Street and South Hermitage Avenue and South Paulina Street. The officers received information about a garage used by gang members to store weapons. Around midnight, while investigating the garage, Officer Valadez approached Thomas, whom officers saw from across a vacant lot. Thomas told Officer Valadez that he and his sister heard gunshots approximately 15 minutes earlier near 60th and Hermitage. While Officer Valadez and Thomas were talking, someone fired five or six gunshots. Officer Valadez and Thomas fell to the ground. A blue or grey Pontiac G6 with a scratched door stopped and a black male with dreadlocks wearing a white t-shirt emerged from the front passenger window and fired a gun in the direction of Officer Valadez and Thomas. Officer Valadez was struck twice and died from his wounds. Police subsequently impounded a four-door Pontiac G6 owned by Gaston's mother that matched the description of the vehicle involved in the shooting. The car was parked a few blocks from the scene of the shooting and the hood was still warm. Officers recovered bullet casings and three guns from the car. Walker and several others were arrested on porch near the scene of the shooting. Walker's fingerprint and DNA were found on one of the guns, although he tested negative for any gunshot residue. There was also evidence that

Walker and Gaston had been pulled over in Gaston's mother's car at around 3 p.m. on May 31 for a traffic violation.

¶ 6    An assistant state's attorney interviewed Walker after the arrest. A videotaped interview of Walker watching Gaston's videotaped statement, Walker's own videotaped statement, and a transcript of Walker's videotaped statement were admitted into evidence. Walker initially denied any involvement in the shooting. However, after viewing Gaston's videotaped statement, Walker stated "I'm the driver, I was driving ***." During that interview, Walker explained that he and Gaston were getting tattoos between 9:30 p.m. and 10:30 p.m. near West 62nd Street and South Wolcott Avenue. Gaston was driving his mother's Pontiac G6 when someone shot at the vehicle. Gaston drove with Walker to his house and retrieved a gun. When Gaston returned to the car, he told Walker to drive. Walker knew Gaston would "probably shoot but he probably wouldn't try to hit nobody." While Walker was driving between 10 and 20 miles per hour, Gaston stuck his arm out of the passenger side window and fired between five and six shots. Walker denied having a gun on him at the time and denied shooting a gun. He did not know what kind of gun Gaston had. After the shooting, Walker drove down an alley to get rid of the gun, then parked at 61st and Paulina before joining friends on the porch where he and others were ultimately arrested.

¶ 7    The circuit court entered into evidence recordings of two phone calls Walker made from jail. In a July 31, 2009, call, Walker stated "[c]ause I'm like—then I'm like, man, they gotta get (inaudible) gotta get my fingerprints of [*sic*] this motherfucker, (inaudible) they gotta get it off this motherfucker. They gotta get it off this motherfucking steering wheel, gotta get it off this here gun that they say that killed this ***." During a November 5, 2011, phone call to his mother, Walker was recorded as saying "they might do it to me cause I'm just the driver ***." Walker did not testify on his own behalf and the defense presented no evidence.

¶ 8     The jury found Walker guilty of one count of first degree murder and one count of attempted first degree murder, and Walker was sentenced to 125 years' imprisonment. We affirmed Walker's convictions on direct appeal over his contentions that (1) his trial counsel was ineffective for failing to file a pretrial motion to redact Walker's use of his prejudicial nickname from his videotaped statement and the transcript of that statement, and (2) the circuit court should have excluded the State's firearms expert's testimony because his opinions lacked an adequate foundation. *Walker*, 2017 IL App (1st) 141036-U, ¶¶ 28-52.

¶ 9     On October 3, 2018, Walker, through counsel, filed a petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2018)). Count I of his petition— the only count at issue on appeal—asserted that his trial counsel provided ineffective assistance by failing to "investigate witnesses whose names and contact information was available both in the police reports and who were made known to defense counsel by [Walker]."[1] The petition asserted Walker "was prejudiced because there is no reason to believe the investigation would have been futile." Attached to Walker's petition was Clint Massey's affidavit, which asserted that he was with friends sitting on a porch at West 62nd Street and South Paulina Avenue on May 31, 2009. Walker joined them on the porch around 11:30 p.m. and did not leave the group until police arrived and arrested them. Massey averred that he would have been willing to testify that he was with Walker on May 31, 2009, after 11:30 p.m., and Walker's trial counsel never contacted him.

¶ 10    Also attached to the petition was Gaston's affidavit in which he stated, among other things, he and Walker left a tattoo party and then "drove down the 6100 block of [S]outh Hermitage Avenue and mother's car was shot at." He drove toward his house "and let [Walker] out of the car in front of 6235 S. Paulina Avenue, so he could join some friends on the porch, then I parked

---

[1]Count II of Walker's petition asserted a claim of actual innocence, which the circuit court dismissed. Walker does not press his actual innocence claim on appeal.

across the street near 61st and Paulina." Clint Massey was among the people on the porch "when Kevin joined them."

¶ 11   The circuit court entered a written order summarily dismissing Walker's petition. The circuit court observed that Walker's ineffective assistance of counsel claim was waived because he pursued a different ineffective assistance of counsel claim on direct appeal. Waiver aside, the circuit court found that Walker failed to show he was prejudiced by his counsel's failure to contact Massey. The circuit court found that while Massey "provides an account for petitioner's whereabouts at approximately 11:30 p.m., he does not have an accounting of where he was before that time," and noted that Officer Valadez responded to the area where he was shot shortly after starting his shift at 11 p.m. Massey's affidavit, therefore, did not exclude Walker from the scene of the shooting, and even if Massey's statement was presented at trial, "it is unlikely that the results of the proceedings would have changed."

¶ 12   Walker filed a timely notice of appeal.

¶ 13                                    II. ANALYSIS

¶ 14   On appeal, Walker argues that his postconviction petition stated an arguable claim of ineffective assistance of counsel. He asserts that his petition set forth an arguable claim that his trial counsel's performance fell below an objectively reasonable standard because Massey was disclosed as a potential alibi witness prior to trial and trial counsel had Massey's contact information, but counsel never investigated or called Massey as a potential alibi witness. He further asserts that he presented an arguable claim that he was prejudiced by his trial counsel's deficient performance because presenting alibi evidence would have increased the chance of acquittal. He argues that there were no eyewitnesses that identified him, he was convicted on an accountability

5

theory, and he had argued at a suppression hearing that his videotaped inculpatory statements were the product of police coercion.

¶ 15    The Act provides a three-stage process for postconviction petitions. At the first stage, the circuit court reviews the petition and, accepting the petition's allegations as true, "determines whether 'the petition is frivolous or is patently without merit.' " *People v. Tate*, 2012 IL 112214, ¶ 9 (citing *People v. Hodges*, 234 Ill. 2d 1, 9 (2009)). Summary dismissal is only appropriate where the petition "has no arguable basis either in law or in fact." *Id.* " '[A] petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17).

¶ 16    If a petition is not dismissed as patently frivolous or without merit, it proceeds to the second stage. The circuit court then "must determine if the petition and any accompanying documentation make 'a substantial showing of a constitutional violation.' " *Id.* ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). In the context of ineffective assistance of counsel claims, "it is appropriate [at the second stage] to require the petitioner to 'demonstrate' or 'prove' ineffective assistance by 'showing' that counsel's performance was deficient and that it prejudiced the defense." *Id.* ¶ 19. If the petitioner fails to make such a showing, the petition is dismissed. *Id.* ¶ 10. But if the petitioner makes a substantial showing of a constitutional violation, the petition advances to the third stage where the circuit court holds an evidentiary hearing. *Id.*

¶ 17    Here, the circuit court summarily dismissed Walker's petition at the first stage. Our review of the circuit court's judgment is *de novo*. *Id.*

¶ 18    We find that Walker's petition did not present an arguable claim that he was prejudiced by his counsel's allegedly deficient performance. We found on direct appeal that the evidence of Walker's guilt was "overwhelming." *Walker*, 2017 IL App (1st) 141036-U, ¶ 47. We found that

"The evidence of defendant's guilt was not closely balanced. Multiple witnesses identified the car involved in the shooting as a four-door grey or blue car, and Officer Lopez identified the make as a Pontiac. A four-door grey or blue Pontiac was found parked a few blocks away approximately an hour after the shooting and it was registered to Gaston's mother. Several witnesses to the shooting identified Gaston's car as the shooter's car. Earlier that day, Gaston and defendant were pulled over by Illinois State Police in that car, and Gaston's mother stated it was still in Gaston's possession at 9:30 p.m. on May 31. Defendant's statement put him and Gaston together getting tattoos at 10:00 p.m., which was corroborated by Gibbons, who saw them at his house around that time. Furthermore, defendant admitted in his videotaped statement that he was in Gaston's car when they were shot at, that he and Gaston went to get a gun, that when Gaston returned with a gun, Gaston told him to drive, he willingly drove Gaston back to the location of shooting, knowing that Gaston was going to shoot at someone, and he drove slowly while Gaston fired a gun from the moving car. As explained above, the State established that the bullets recovered from Officer Valadez's body and the cartridge casings recovered from the scene of the shooting and Gaston's car were fired from the guns recovered from Gaston's trunk. Defendant's fingerprint and DNA were found on the .40–caliber semi-automatic pistol recovered from the trunk of Gaston's car. Defendant made his videotaped statements to police at around 6:30 p.m. on June 1, 2009. After being

7

Mirandized, he was shown Gaston's videotaped statement. Defendant made multiple statements in which he admitted that that he was the willing driver of the car at the time Officer Valadez was shot and killed and the attempted murder of Thomas took place. Defendant fully corroborated the State's evidence as it related to the fatal shooting of Officer Valadez. Under an accountability theory, 'a person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.' 720 ILCS 5/5-2(c) (West 2014)." *Id.*

¶ 19    Walker's petition does not state an arguable claim that he was prejudiced by his counsel's allegedly deficient performance because there is no possibility that investigating or calling Massey as an alibi witness would have changed the outcome of the trial. Walker's inculpatory statements to police squarely placed him in the driver's seat of Gaston's mother's car at the time of the shooting. Walker explained to police that Gaston drove home to get a gun after someone shot at the car. When Gaston returned to the car, he told Walker to drive, and Walker did so. Walker stated that he knew Gaston would shoot the gun and explained that he drove slowly while Gaston fired several shots from the car. Presenting an alibi witness to contradict Walker's own voluntary statements about his whereabouts would not have changed the outcome at trial.

¶ 20    Walker cites *People v. Cleveland*, 2012 IL App (1st) 101631 to support his assertion that putting on an alibi witness would have increased his chances of acquittal. *Cleveland* is distinguishable because that case did not involve a defendant that made voluntary inculpatory statements acknowledging his involvement in the crime. In his appellate brief, Walker argues

8

"[t]he most damaging piece of evidence was Walker's videotaped statement, which he alleged at a pre-trial suppression hearing was the product of coercion." The record citation he provides in his appellate brief does not support this assertion, although it is clear from the record that Walker filed a pretrial motion to, among other things, suppress the statements he made to police. His suppression motion was denied after a hearing, and he did not seek reversal of that decision in his direct appeal. We reject Walker's assertion that there is any doubt about the voluntariness of his statements.

¶ 21 Walker further asserts that he was convicted on an accountability theory and nothing in his statements to police suggests that he "knew the codefendants were going to fire guns out the window of the vehicle." That assertion is directly contradicted by Walker's statement to police that he knew that Gaston would "probably shoot but he probably wouldn't try to hit nobody." Walker clearly acknowledged that he knew Gaston intended to fire the gun. Furthermore, Walker acknowledged that he drove the car slowly while Gaston fired the gun, and then drove with Gaston to dispose of the gun used in the shooting.

¶ 22 Under the circumstances here, and given the trial record, we find that Walker's petition does not present an arguable claim that he was prejudiced by his counsel's failure to investigate Massey as a potential alibi witness where the evidence at trial—especially Walker's own inculpatory statements placing him in the driver's seat of vehicle at the time of the shooting— overwhelming established Walker's guilt. We therefore affirm the circuit court's judgment summarily dismissing Walker's petition at the first stage.

¶ 23                                  III. CONCLUSION

¶ 24 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 25 Affirmed.