NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210383-U

NO. 4-21-0383

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| CHRISTOPHER J. HARRIS, | ) | No. 09CF171 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court granted the Office of the State Appellate Defender's motion to
               withdraw as counsel and affirmed the trial court's judgment as no issue of
               arguable merit could be raised on appeal.

¶ 2     Defendant, Christopher J. Harris, appeals from the trial court's denial of his

motion for leave to file a successive postconviction petition. On appeal, the Office of the State

Appellate Defender (OSAD) moves to withdraw as counsel on the ground no issue of arguable

merit can be raised. Defendant did not file a response to OSAD's motion. We grant OSAD's

motion and affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4     This court has set forth the underlying facts of this case in defendant's prior

appeals. See *People v. Harris*, 2019 IL App (4th) 170261, 141 N.E.3d 1; see also *People v.*

*Harris*, 2015 IL App (4th) 130672-U. Accordingly, we will set forth only those facts necessary to resolve the issue presented in this case.

¶ 5		On September 21, 2009, several members of the Gee family, including Raymond ("Rick") Gee, Ruth Ann Gee, Justina Constant (16 years old), Dillen Constant (14 years old), and Austin Gee (11 years old) were found dead in their home. The youngest member of the Gee family, T.G. (3 years old), was found alive but suffering from severe head trauma. Defendant, the ex-husband of Nicole Gee (a daughter of Rick), was later charged with various criminal offenses associated with the deaths and injuries caused to the members of the Gee family.

¶ 6		A. Jury Trial

¶ 7		At a May 2013 jury trial, defendant testified he acted in self-defense and killed 14-year-old Dillen after he entered the Gee residence and discovered Dillen was in the process of killing the other members of the Gee family.

¶ 8		Defendant presented the testimony of Dr. Phillip Rossi, Dillen's primary care physician. Dr. Rossi treated Dillen between 2006 and 2008 for attention deficit disorder (ADD). Dr. Rossi testified children with ADD could exhibit aggression, although ADD is a common diagnosis and none of the symptoms involve extreme levels of violence. In 2007, Dillen's parents reported Dillen had disruptive behavior in school but later reported improved behavior. In January 2007, Dr. Rossi suggested Dillen see a child psychiatrist.

¶ 9		Defendant presented the testimony of Olivia Messena, Dillen's therapist. Messena was informed of Dr. Rossi's suggestion Dillen see a child psychiatrist, but she did not make the referral as Dillen did not keep enough appointments for her to complete his assessment.

¶ 10		Defendant also presented the testimony of Dr. Craig Anderson. Dr. Anderson testified he reviewed Dillen's records and found Dillen had risk factors for violence, including

exposure to video-game violence, ADD, acting out in school, low economic status, and being a male. Dr. Anderson testified regarding Dillen's history of physical violence and aggression toward objects and instances of verbal aggression. Dr. Anderson acknowledged (1) no single risk factor or set of risk factors could predict whether a person will become violent, (2) risk factors cannot be used to predict future violence, and (3) he did not perform a psychological evaluation of Dillen.

¶ 11        In rebuttal, the State presented evidence from Dillen's teachers, his coach, and the postmaster, who testified regarding Dillen's behavior between 2007 and 2009. These witnesses' testimonies demonstrated Dillen had not exhibited unusual signs of violence.

¶ 12        The jury disbelieved defendant's account and found him guilty of five counts of first degree murder (720 ILCS 5/9-1(a) (West 2008)), one count of attempt (first degree murder) (*id.* § 8-4(a), 9-1(a)(3)), one count of aggravated battery of a child (*id.* § 12-4.3(a)), one count of home invasion (*id.* § 12-11(a)(1)), and one count of armed robbery (*id.* § 18-2(a)). The trial court sentenced defendant to five terms of natural life imprisonment for first degree murder, 30 years' imprisonment for attempt (first degree murder), 30 years' imprisonment for home invasion, and 20 years' imprisonment for armed robbery, all of which were imposed consecutively. (The court merged the aggravated-battery-of-a-child conviction with the attempt (first degree murder) conviction.) On direct appeal, we affirmed defendant's convictions and sentences. *Harris*, 2015 IL App (4th) 130672-U.

¶ 13                    B. Initial Postconviction Petition

¶ 14        In December 2016, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2016)). Defendant claimed, in part, his trial counsel rendered ineffective assistance by failing to request a

- 3 -

continuance on the last day of his trial to secure testimony of two witnesses who would have supported his claim of self-defense. Defendant alleged Nicole and A.H., his and Nicole's daughter, were scheduled to testify on the last day of his trial but had "unintentionally" missed their flight from Florida to Illinois. Defendant alleged the "testimony was crucial to the defense as both witnesses [had] firsthand knowledge of [Dillen's] *** threats to kill everyone in his family," which "did not have another source to come from during *** trial." To support these allegations, defendant attached to his petition (1) a signed and notarized personal evidentiary affidavit, (2) an unsigned "affidavit" drafted by defendant for Nicole, and (3) an unsigned "affidavit" drafted by defendant for A.H. In his personal evidentiary affidavit, defendant stated he questioned his trial counsel on the last day of trial regarding why counsel rested without calling Nicole and A.H., to which counsel stated he did so because Nicole and A.H. had missed their flights. Defendant averred, had Nicole been called to testify, she would have testified, in part, she "had talked with Rick Gee *** only days before the murders, and that Rick was scared Dill[e]n would violently act out after Rick had punished Dill[e]n recently for breaking down Rick[']s bedroom door[ ] and stealing money from Rick," and "Dill[e]n had 'lashed out' and said he 'would kill Rick' and said 'your [*sic*] not my dad.' " Defendant further averred, had A.H. been called to testify, she would have testified, in part, she "was there when Dill[e]n would tell his siblings that he'd kill them." Defendant noted in his affidavit both Nicole and A.H. were "willing to sign their affidavits, but due to the harsh conditions of confinement, [he] ha[d] been unable to secure them."

¶ 15    In March 2017, the trial court entered a written order summarily dismissing defendant's postconviction petition. As to defendant's claim suggesting his trial counsel rendered ineffective assistance by failing to request a continuance to secure testimony from Nicole and

A.H., the court found defendant failed to attach the necessary supporting material or sufficiently explain why the same was not attached. The court found, even if it considered defendant's summary of the alleged testimony from Nicole and A.H., that testimony did not show counsel's failure to seek a continuance to call those witnesses was arguably deficient as Nicole's testimony would have been inadmissible as hearsay and irrelevant and A.H.'s testimony would have been inadmissible as neither specific nor associated with a relevant time frame.

¶ 16        On appeal, this court affirmed the summary dismissal of defendant's postconviction petition, finding defendant "failed to attach the necessary supporting material or provide a reasonable explanation for its absence." *Harris*, 2019 IL App (4th) 170261, ¶ 20.

¶ 17                        C. Successive Postconviction Petition

¶ 18        On December 8, 2020, defendant filed a *pro se* motion for leave to file a successive postconviction petition. In his motion, defendant argued the trial court should grant him leave to file a successive petition "in order to clarify the proper standard for evaluating a post conviction petitioners explanation for failing to attach affidavits or other evidence to his petition." Defendant then reiterated his claim trial counsel rendered ineffective assistance by failing to request a continuance to secure the testimony of Nicole and A.H. Defendant attached to the motion (1) three signed affidavits from Nicole and (2) a signed affidavit from A.H. Defendant argued the "harsh conditions of his incarceration" was the "cause" preventing him from "timely obtaining the affidavits" from Nicole and A.H., "combined with several other impedements [*sic*]." Defendant further explained he "wrote Nicole several times attempting to secure the affidavits *** to no avail." Defendant explained Nicole was experiencing "personal problems," including being "in and out" of county jail and eventually ending up in the

Department of Corrections. Due to Nicole's "personal problems," the Department of Children and Family Services took custody of A.H., which made her difficult to locate.

¶ 19 Nicole's and A.H.'s affidavits detailed numerous incidents and statements they witnessed relating to the violent tendencies of Dillen.

¶ 20 On May 21, 2021, the trial court denied defendant's motion for leave to file a successive postconviction petition. In its written order, the court stated defendant's request for clarification was "not an issue for which the Court can or will grant relief under the Act." As to defendant's claim of ineffective assistance of counsel, the court found defendant failed to meet the cause and prejudice threshold for successive postconviction petitions and, in addition, his claim was barred by *res judicata*.

¶ 21 Defendant appealed the trial court's denial of his motion for leave to file a successive postconviction petition, and OSAD was appointed to represent him on appeal. In December 2021, OSAD moved to withdraw as counsel on appeal. We granted defendant leave to file a response to OSAD's motion on or before January 25, 2022. Defendant has not done so.

¶ 22                                      II. ANALYSIS

¶ 23 OSAD contends no meritorious argument can be made the trial court erred in denying defendant leave to file a successive postconviction petition. We agree.

¶ 24 The Act provides a means to collaterally attack a criminal conviction based on a substantial denial of a defendant's state or federal constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. Beaman*, 229 Ill. 2d 56, 71, 890 N.E.2d 500, 509 (2008). Issues adjudicated on direct appeal or a previous collateral proceeding are barred by *res judicata*, and issues that could have been raised but were not are

forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. The Act contemplates the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621 (2002). A defendant must obtain leave from the trial court in order to file a successive petition under the Act. 725 ILCS 5/122-1(f) (West 2020).

¶ 25 To obtain leave to file a successive postconviction petition, a defendant must do one of the following: (1) show cause and prejudice for the failure to raise a claim in his or her earlier petition or (2) set forth a colorable claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459. Cause is defined as "some objective factor external to the defense" that prevented the defendant from raising the claim in an earlier proceeding. (Internal quotation marks omitted.) *Id.* at 460. Prejudice is an error so infectious to the proceedings that the resulting conviction or sentence violates due process. *Id.* at 464. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 38, 38 N.E.3d 1256.

¶ 26 OSAD contends it can make no meritorious argument on appeal as defendant cannot demonstrate cause and prejudice. We agree.

¶ 27 In this case, defendant's ineffective assistance claim does not amount to a claim of actual innocence. Therefore, defendant must demonstrate cause and prejudice in order to obtain leave to file a successive postconviction petition. *Pitsonbarger*, 205 Ill. 2d at 459. However, defendant does not offer an objective factor which prevented him from presenting his claim in his initial postconviction petition. Defendant did present an identical claim of ineffective assistance in his initial petition but failed to explain the absence of supporting affidavits. In his motion for leave to file a successive postconviction petition, defendant explains in detail how the conditions of his imprisonment prevented him from obtaining the affidavits of Nicole and A.H.

As we held in defendant's prior appeal from the dismissal of his initial postconviction petition, "imprisonment, by itself, cannot excuse a defendant's failure to attach supporting material to a postconviction petition." *Harris*, 2019 IL App (4th) 170261, ¶ 19. Defendant's further descriptions of the limitations of his confinement do not provide an *objective* factor to explain why he could not properly present his claim in his initial postconviction petition, either by including affidavits or explaining their absence. See 725 ILCS 5/122-2 (West 2020) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations *or shall state why the same are not attached*." (Emphasis added.)). Thus, defendant has not demonstrated cause to file a successive postconviction petition.

¶ 28 Even if defendant's imprisonment could demonstrate cause to file a successive postconviction petition, defendant cannot establish he was prejudiced. Nicole's and A.H.'s affidavits offer statements pertaining to Dillen's character. Even if their testimony were admissible at trial, it cannot be shown defendant's trial would have a different result. Nicole and A.H.'s potential testimony consisted of possible evidence of Dillen's violent character, not information of Dillen's actions the day he and the Gee family were killed. At trial, defense counsel called medical and expert witnesses who testified to Dillen's mental health and treatment, as well as Dillen's risk factors for violence. Any testimony provided by Nicole and A.H. would have been cumulative to the evidence already presented. Therefore, counsel not requesting a continuance to secure their testimony is not "an error that so infected the entire trial that the resulting conviction or sentence violates due process" *Pitsonbarger*, 205 Ill. 2d at 464.

¶ 29 We agree with OSAD no meritorious argument can be made the trial court erred in denying defendant leave to file a successive postconviction petition.

¶ 30                                    III. CONCLUSION

¶ 31    We grant OSAD's motion for leave to withdraw and affirm the trial court's

judgment.

¶ 32    Affirmed.