2022 IL App (1st) 200644-UB

No. 1-20-0644

Order filed June 14, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 16948 |
| | ) | |
| DEANGELO WILLIAMS, | ) | The Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's summary dismissal of defendant's *pro se* postconviction petition is affirmed where defendant failed to attach any affidavits or other evidentiary documentation to his petition in support of his allegations.

¶ 2    Defendant DeAngelo Williams appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant contends the circuit court

erred when it dismissed his petition because he sufficiently alleged multiple theories of ineffective assistance of trial counsel for failing to investigate and call exculpatory witnesses. We affirm.[1]

¶ 3    Following a 2014 bench trial, defendant was convicted of attempted first degree murder and aggravated battery with a firearm for shooting the coach of his baseball team, Glynn Hall, during a game. The trial court merged the aggravated battery conviction into the attempted murder conviction and sentenced defendant to 32 years' imprisonment. Defendant's sentence included a mandatory 20-year firearm enhancement because he personally discharged a firearm during the offense. 720 ILCS 5/8-4(c)(1)(C) (West 2008).

¶ 4    The facts from defendant's trial were initially presented in this court's prior order affirming his conviction on direct appeal. *People v. Williams*, 2017 IL App (1st) 150819-U. We discuss the evidence from the trial record as necessary for consideration of this appeal.

¶ 5    On September 6, 2009, the Chicago Cardinals baseball team was playing a doubleheader. Glynn Hall was the head coach of the Cardinals and defendant played on the team. Hall testified that prior to the start of the first game, he and defendant were talking with the Cardinals' assistant coach, David Aldridge, and defendant's brother, Antonio Williams, who also played on the team. Defendant and Williams were upset because they were not getting enough playing time. Hall told defendant he was the starting pitcher for the first game but would not be batting. Defendant was fine while playing. During the third inning, Hall removed defendant from the game for allowing too many hits. Defendant became visibly upset, threw his hat and glove, then sat down.

---

[1]Initially, this court found defendant's notice of appeal was untimely filed and dismissed his appeal for lack of jurisdiction. *People v. Williams*, 2022 IL App (1st) 200644-U (filed Mar. 8, 2022). In a supervisory order entered March 25, 2022, the Illinois Supreme Court directed this court to vacate its initial judgment and treat defendant's notice of appeal as a properly perfected appeal. Accordingly, we vacated our initial order on March 28, 2022, and now consider the issues raised by defendant.

¶ 6    Hall testified that as the second game began, defendant was very upset and used obscenities while sitting in the dugout. He complained that he had paid money to play and was not getting his money's worth. Defendant stated that the coach "need[ed] his ass whooped." Michael Harlan, the team captain, told defendant he could not disrespect the coach. Harlan and defendant began arguing and appeared as if they were about to fight, but someone separated them. Harlan told defendant he was kicked off the team because of his attitude. Harlan then sat next to Hall in the dugout.

¶ 7    Defendant walked 20 feet away and grabbed his bag from behind the fence. Defendant returned holding a gun in his hand. Harlan ran down the third base line while Hall ran down the first base line. Defendant chased Hall and fired multiple gunshots at him, striking him four times. The first bullet went through Hall's right arm several inches above his elbow. The second bullet skimmed Hall's shoulder. The third bullet struck Hall's back near his left shoulder. The fourth bullet struck the middle of Hall's back near his spine and lodged in his neck. Hall ran behind a fence and fell to the ground. Defendant stood over Hall, pointed the gun at Hall's head, and attempted to fire the gun at least two more times but no bullets discharged. Hall heard a clicking noise at least twice as defendant pulled the trigger. Defendant ran from the scene.

¶ 8    Hall was transported to Christ Hospital. One bullet remains lodged in Hall's back near his spine. One bullet was lodged in his neck near his carotid artery but came out in April 2012 when Hall was treating the wound himself at home.

¶ 9    Hall testified that he never had an argument or problem with defendant until the shooting. Defendant had attended Hall's birthday party with several teammates at Hall's house in July 2009. After games, Hall always gave a ride home to one of his players, Quincy Haymer, and gave defendant a ride once or twice. Hall was never alone with defendant and denied having sexual

relations with him. At the time of the shooting, there were about seven Cardinals players in the dugout, one batting, one in the batter's circle, one on base, and coaches at first and third base.

¶ 10    Michael Harlan testified substantially the same as Hall regarding the doubleheader and Hall removing defendant from the first game during the third inning. During the second game, defendant sat in the dugout and expressed his displeasure with Hall stating, "I'm going to f*** this motherf***er up." Defendant walked towards Hall. Harlan intervened and stepped between the two men. Hall told defendant it was Harlan's decision whether defendant remained on the team. Harlan told defendant he was no longer on the team because fighting was unacceptable.

¶ 11    Harlan observed defendant exit the dugout, walk to his gym bag, and retrieve a gun. Harlan heard gunshots and ran towards third base. He looked back and saw defendant chasing Hall down the first base line firing multiple gunshots at Hall's back. Harlan heard about five gunshots. Hall fell behind the dugout. As Hall laid on the ground, defendant stood over him, pointed the gun at Hall's head, and appeared to be pulling the trigger, but the gun did not fire. In court, Harlan made the sound, "chink, chink" as he testified that defendant appeared to be pulling the trigger. He did not testify that he heard the gun click. Defendant fled the scene on foot.

¶ 12    On cross-examination, defense counsel asked Harlan how he had heard about a party that was held two months prior to the shooting. Harlan said he heard about it from "David." Counsel asked, "David Altridge?" Harlan confirmed the name.

¶ 13    Robert McKenzie, assistant coach of the Cardinals, testified that defendant had previously expressed concern to him about his playing time. A week before the shooting, defendant was adamant about making sure he pitched in upcoming games. Defendant told McKenzie that he had "anger issues" and there would be "some problems" if he did not get to play.

¶ 14    During the second game on September 6, McKenzie was standing in the coach's box at first base and Altridge was batting when McKenzie heard defendant, Hall, and Harlan arguing loudly and aggressively in the dugout. McKenzie heard Harlan yell, "you're off the team then." McKenzie saw defendant leave the dugout and grab his bag that was hanging on the fence behind the dugout. Defendant removed a semiautomatic gun from his bag and held it in his right hand. Hall ran up the first base line towards McKenzie. Defendant chased Hall and fired at least five or six gunshots at Hall's back. Hall fell to the ground behind a dugout. McKenzie observed defendant stand over Hall and extend his hand with the gun but did not see or hear any additional bullets discharge. McKenzie presumed defendant had run out of bullets. Defendant fled on foot.

¶ 15    Chicago police detective James Scannell testified that after being advised of his *Miranda* rights, defendant gave a written statement to Scannell and Assistant State's Attorney Sam Cervera. Defendant never told Scannell that Hall sexually assaulted him, nor did defendant ever state that he shot Hall because he feared for his own safety. Defendant never said Hall had touched him inappropriately during the game or at any other time. Defendant stated that he fired gunshots at Hall because he lost his self-control and wanted to fight Hall but could not.

¶ 16    Defendant's written statement was admitted into evidence. Therein, defendant stated that he had an anger problem his entire life and had "a hard time controlling his anger and just explodes on people—sometimes for little or no reason at all." Defendant explained that after several months of unsuccessfully looking for a job, "all this anger had him like a time bomb waiting to explode." Defendant claimed he found the gun at the nearby high school between the first and second games of the doubleheader and kept it because he thought he might need it for protection. During the second game, defendant was in the dugout and complained to Harlan about how Hall was running

the team. Hall approached defendant and told him he heard what defendant said. Defendant was angry and ready to fight because Hall addressed him "with animosity." Harlan told defendant to go home. Defendant explained he "was really upset at this point and all his problems over work and not getting a job just came to a head and [he] lost control." Defendant removed the gun from his gym bag and "just started shooting." Defendant stated he "ran after Coach Hall and began firing at Coach Hall's back." He did not know if any of the bullets hit Hall, but Hall fell to the ground. Defendant stated that "he fired his gun at the Coach because he didn't like the way the Coach had been speaking to him in the dug out." Defendant fled and discarded the gun in a backyard.

¶ 17    Chicago police sergeant Vidal Vasquez testified that defendant turned himself in at the police station the day after the shooting. Defendant agreed to help the police find the gun and returned to the location of the shooting with several officers. Defendant's t-shirt and baseball jersey were recovered from the yard of a residence. The gun was never found.

¶ 18    Defendant testified that in August 2009, he attended a party at Hall's house with his brother, Altridge, and Haymer. About a week later, Hall invited defendant to another party at his house. When defendant arrived, Hall was home alone. Defendant joined Hall for a drink. About 10 minutes later, defendant felt weak and was unable to resist Hall's advances. Hall kissed defendant's face and chest and touched his genitals. Defendant lost consciousness for seven to eight hours and awoke in Hall's bed with anal pain. Defendant left Hall's house and did not tell anyone about the incident because he was embarrassed and thought no one would believe him.

¶ 19    The next time defendant saw Hall was on September 6 at the doubleheader. During the first game, defendant was the starting pitcher, but was later moved to right field. Defendant testified he had no problem with being moved. Defendant did not play in the second game. He testified that

while the rest of the team was on the field, Hall sat next to him in the dugout and apologized. Defendant tried to leave but Hall grabbed his shoulder and pulled him back down. Defendant told Hall to leave him alone. The team returned from the field and defendant's brother was at bat. Defendant told Harlan to get Hall away from him and said if Hall continued harassing him, he would "knock [Hall] out." An argument ensued and Hall encouraged defendant to fight him before their teammates separated them. Harlan repeatedly yelled at defendant to leave. Defendant began putting his belongings inside his bag in the dugout, preparing to leave. Hall was "full of rage" and approached defendant aggressively while making derogatory statements. Defendant was afraid because Hall was physically larger than him and he did not want to be victimized again. Defendant drew a gun from his bag and shot Hall. Defendant had found the gun near the high school between games and placed it inside his bag "for no reason."

¶ 20    On cross-examination, defendant denied he was upset about not playing. He admitted that when he pointed the gun at Hall, Hall ran away from him down the first base line. Defendant further admitted he chased after Hall and repeatedly pulled the trigger firing multiple gunshots at Hall's back. Defendant acknowledged he was angry as he fired the gun. He denied standing over Hall and pointing the gun at him on the ground, but admitted he continued shooting at Hall until he ran out of bullets. Defendant fled from the scene and discarded the gun and his jersey in a backyard a couple of blocks from the shooting. Defendant denied he had problems controlling his anger. Defendant did not tell Scannell or Cervera about Hall's inappropriate sexual contact because they never asked him what led to the "situation," and he was embarrassed.

¶ 21    When the defense rested, the trial court specifically asked defendant, "[d]o you wish any other witnesses to be call[ed] on your behalf?" Defendant replied, "[n]o, sir."

¶ 22    The trial court found the testimony from Harlan, McKenzie, and Scannell credible and found defendant's testimony regarding his motivation for the shooting not credible. The court rejected defendant's claim of self-defense. It found that none of defendant's actions were consistent with him having any shame or fear of Hall. The court noted that defendant continued attending practices and games and playing for the team. The court stated that if defendant feared Hall, he would have been motivated to stay away from him. The court found that defendant's statement that he was "going to f*** this motherf***er up" was not consistent with having imminent fear of death or great bodily harm, but instead, showed defendant was motivated by anger towards Hall due to his dissatisfaction with his playing time.

¶ 23    The court further pointed out that defendant shot Hall four times and McKenzie testified he observed three additional shots hit the ground. The court found that defendant fired at least seven rounds and continued firing the gun near Hall's head as he laid on the ground. The court stated that Hall was saved from death only because the gun was empty. The court concluded the State proved beyond a reasonable doubt that defendant had an intent to kill Hall. At sentencing, the court rejected defendant's request to be sentenced as a Class 1 felon because it did not believe his testimony about why he shot Hall, and thus, defendant did not prove mitigating circumstances.

¶ 24    On direct appeal, this court rejected defendant's contention that his sentence was excessive. We corrected his mittimus to accurately reflect the offense of which he was convicted and affirmed his conviction in all other respects. *Williams*, 2017 IL App (1st) 150819-U.

¶ 25    On October 31, 2019, defendant filed the instant *pro se* postconviction petition under the Act. Defendant raises three claims of ineffective assistance of trial counsel for failing to call various exculpatory witnesses at trial.

¶ 26    First, defendant alleges trial counsel failed to conduct a reasonable investigation when he did not attempt to contact any of the dozens of eyewitnesses to the shooting, especially the players on the teams, whose testimony would have shown defendant did not have an intent to kill. Defendant states that identifying potential witnesses was simple because their names were registered with the league and appeared on the rosters. Defendant names his brother, Antonio Williams, as one of the eyewitnesses. Defendant claims Williams provided an affidavit stating that trial counsel never contacted him, and if he had, Williams was willing to testify that: (1) he saw defendant chase and shoot at Hall, but defendant did not appear to be careful of hitting Hall, firing two shots into the ground; (2) the gun ceased firing while defendant pursued Hall at which time defendant fled the scene, and defendant never stood over Hall with the gun extended towards him as he lay on the ground; and (3) defendant was never removed from the game.

¶ 27    Defendant argues Williams's testimony would have contradicted the testimony from the State's witnesses that defendant stood over Hall and attempted to shoot him twice more, thereby negating the evidence of intent to kill. In addition, defendant argues Williams's testimony that defendant was not removed from the game negates the State's proposed motive for the shooting. Defendant claims additional unnamed eyewitnesses were willing to testify similar to Williams. Defendant argues that if counsel had presented these witnesses, he would have been convicted of either aggravated battery with a firearm or attempted murder while acting under a sudden intense passion resulting from serious provocation and sentenced for a Class 1 felony.

¶ 28    Second, defendant alleges counsel failed to present a firearms expert or other evidence regarding the capabilities of semiautomatic handguns to impeach the testimony of Hall and Harlan. Defendant asserts Hall and Harlan both testified that they heard two clicking sounds as defendant

pulled the trigger with the gun pointed at Hall's head, but no bullets discharged. Defendant claims semiautomatic handguns do not make clicking sounds when the gun is empty because the trigger automatically locks and is impossible to pull. Defendant does not cite any authority for this claim but contends the court can take judicial notice of this "fact" because it is common knowledge to "millions of Americans" who have fired semiautomatic handguns. Defendant argues he was prejudiced because if counsel had presented expert testimony on this point, the trial court would have found Hall and Harlan's testimony not credible, would not have found defendant had an intent to kill, and would not have found defendant guilty of attempted murder.

¶ 29 Third, defendant alleges counsel should have called an expert witness to testify regarding the behavior of sexual assault victims, specifically, how they respond after being assaulted. He argues that it is common for victims of sexual assault to fail to report the assault and continue being in the presence of their assaulter. Defendant claims the court can also take judicial notice of this "fact." Defendant argues he was prejudiced because if counsel had presented expert testimony there is a reasonable probability the trial court would have found defendant's testimony that he shot Hall out of fear credible. Consequently, defendant asserts the court would have found he acted in self-defense, or the court could have imposed a Class 1 sentence for attempted murder.

¶ 30 The only document attached to defendant's postconviction petition is his own affidavit in which he avers that he learned from an unidentified third party that there are other witnesses to the shooting whose statements support his claims and contradict the State's witnesses. Defendant lists these additional witnesses as Charlie Darlin, David Aldridge, Antonio Williams, Quincey Haymer, and JC McDowell. Defendant states that he did not attach affidavits from these "potential witnesses" because they "only recently surfaced" and the third party is still trying to locate them.

Defendant further states that when they are located, he will have them prepare affidavits and "amend them to the petition." Notably, although defendant states in his petition that he attached an affidavit from his brother, Antonio Williams, no such affidavit is attached. Nor did defendant attach affidavits from any potential expert witnesses or include evidence or documentation in support of his claims regarding semiautomatic handguns and sexual assault victims.

¶ 31    Initially, the circuit court found that defendant's allegations of ineffective assistance of counsel were matters of trial record that could have been raised on direct appeal, and therefore, were waived. Nevertheless, the court addressed the allegations and determined they were without merit. Regarding the additional eyewitnesses, the court found defendant failed to make the requisite factual showing because he failed to attach affidavits from any of the potential witnesses. The court further found that their proposed testimony that defendant was not removed from the game and did not attempt to fire two gunshots at Hall's head would not have changed the result at trial where defendant admitted he chased Hall and emptied his gun into Hall's back. Regarding the expert witnesses, the court found defendant's claims entirely conclusory, and thus, not legally sufficient under the Act. The court pointed out that defendant failed to attach affidavits from any potential experts who were willing to render opinions at trial. In addition, defendant failed to explain the significance of their proposed testimony where defendant acknowledged that he emptied the gun into Hall's back. The circuit court concluded that defendant's allegations were frivolous and patently without merit and summarily dismissed his postconviction petition.

¶ 32    On appeal, defendant contends the circuit court erred when it dismissed his petition because he sufficiently alleged multiple theories of ineffective assistance of trial counsel for failing to investigate and call exculpatory witnesses. Defendant argues that his claims are not forfeited

because the record did not contain sufficient information for the allegations to be raised and addressed on direct appeal. Defendant further argues that his failure to attach affidavits from the potential witnesses was excused because he satisfied the exception to the rule when he explained that the witnesses were recently discovered and he was trying to locate them. Defendant also argues that the circuit court's "discussion" of "trial strategy" as an insufficient basis for an ineffective assistance claim was premature during first-stage proceedings. Defendant asks this court to reverse the circuit court's dismissal and remand his petition for second stage proceedings.

¶ 33 The State responds that the petition was properly dismissed because defendant forfeited his allegations when he failed to raise the issues on direct appeal. Alternatively, the State argues that defendant failed to comply with the pleading requirements of the Act because he failed to attach affidavits from the potential witnesses or other evidence to support his allegations. In addition, the State argues that defendant's claims have no arguable merit because they are based on speculation, and defendant was not prejudiced where the evidence against him was overwhelming.

¶ 34 The Act provides a process whereby a prisoner can file a petition asserting that his conviction was the result of a substantial denial of his federal or state constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Knapp*, 2020 IL 124992, ¶ 43. A postconviction proceeding is not a substitute for a direct appeal, but instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v. Tate*, 2012 IL 112214, ¶ 8. We review the circuit court's summary dismissal of defendant's postconviction petition *de novo*. *People v. Hatter*, 2021 IL 125981, ¶ 22. Under this standard, the reviewing court makes its own independent assessment of the allegations and is " 'free to substitute

its own judgment for that of the circuit court to formulate the legally correct answer.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)).

¶ 35 Our supreme court has held that a postconviction petition may be summarily dismissed as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks such an arguable basis when it is based on fanciful factual allegations or an indisputably meritless legal theory, such as a theory that is completely contradicted by the record. *Id.* At the summary dismissal stage, all well-pled allegations in the petition must be taken as true unless they are contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82.

¶ 36 As a threshold matter, we find that defendant's allegations of ineffective assistance of trial counsel could not have been raised on direct appeal, and therefore, are not forfeited. Generally, a defendant is required to raise a claim of ineffective assistance of counsel on direct appeal when it is apparent on the record or risk forfeiting the claim. *People v. Veach*, 2017 IL 120649, ¶¶ 46-47. However, when an ineffective assistance claim depends on facts not found in the record, procedural default will not preclude a defendant from raising that claim on collateral review. *Id.* ¶ 47. A claim based on what counsel should have done may rely on proof that is not contained in the record due to counsel's allegedly deficient representation. *Tate*, 2012 IL 112214, ¶ 14. Thus, " 'a default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense.' " *Id.* (quoting *People v. West*, 187 Ill. 2d 418, 427 (1999)).

¶ 37 Here, defendant alleges in his petition that his brother, Antonio Williams, was willing to testify at trial regarding his eyewitness observation of the shooting, which would have contradicted the testimony of the State's witnesses, but counsel never contacted Williams to testify. Defendant

further alleges that additional eyewitnesses, named in his affidavit, were willing to testify similar to Williams. Defendant also contends counsel should have presented expert testimony regarding the functioning of semiautomatic handguns which would have impeached the State's witnesses, and expert testimony regarding the behavior of sexual assault victims which would have supported his theory that he shot Hall out of fear. Defendant's allegations are based on information that is not found in the trial record, and thus, they are not forfeited. *Tate*, 2012 IL 112214, ¶ 15.

¶ 38     Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Veach*, 2017 IL 120649, ¶ 29. To support a claim of ineffective assistance of trial counsel, defendant must demonstrate that counsel's representation was deficient, and as a result, he suffered prejudice that deprived him of a fair proceeding. *Strickland*, 466 U.S. at 687. Specifically, defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Veach*, 2017 IL 120649, ¶ 30. However, at the first stage of postconviction proceedings, allegations of ineffective assistance of counsel are judged by a lower pleading standard, and a petition raising such claims may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 39     Pursuant to section 122-2 of the Act, defendant is required to attach to his petition "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). The purpose of this requirement is for defendant to show that the allegations in his postconviction petition are capable of objective or independent

corroboration. *People v. Allen*, 2015 IL 113135, ¶ 26 (citing *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). The attached documentation "must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). Failure to either attach the required documentation or explain its absence is "fatal" to a postconviction petition and alone justifies summary dismissal of the petition. *Id.* at 255. If a petition is not properly supported with the required attachments, the court need not reach the question of whether the petition states the gist of a constitutional claim to survive summary dismissal. *Id.*

¶ 40    Here, the circuit court's summary dismissal of defendant's *pro se* postconviction petition was proper because defendant failed to satisfy the pleading requirements of section 122-2 of the Act. Defendant did not attach affidavits from any of his alleged eyewitnesses averring that they were willing to testify that defendant did not stand over Hall and attempt to shoot him in the head, or that he was not removed from the game. In his petition, defendant claims he attached an affidavit from his brother, Antonio Williams, but he did not.

¶ 41    In his own affidavit attached to his petition, defendant states that he did not attach affidavits from his "potential witnesses" because they "only recently surfaced" and an unidentified third party was trying to locate them. We find this explanation insufficient to excuse the absence of the affidavits, especially that of his own brother, Williams, whose affidavit was allegedly prepared and supposed to have been attached. Defendant names David Aldridge and Quincey Haymer as two of the other potential eyewitnesses to the shooting. The record shows that Aldridge and Haymer were two of defendant's teammates whose names were mentioned at trial by multiple witnesses, defendant, and counsel. Therefore, they are not witnesses who "only recently surfaced."

¶ 42    Nor did defendant attach affidavits from any potential expert witnesses or other evidence or documentation in support his allegations regarding the functionality of semiautomatic firearms and the behavior of sexual assault victims. In his petition, defendant argues that the court can take judicial notice that his assertions regarding these issues are "facts." We disagree.

¶ 43    Illinois Rule of Evidence 201 provides that, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). In this case, the gun was never recovered. There was no testimony as to what type of gun it was other than a semiautomatic handgun. The trigger functionality of semiautomatic handguns, in general, and expert opinions regarding the behavior of sexual assault victims are not "facts" that are "generally known" to a trial court such that a court can take judicial notice of the information.

¶ 44    In addition, we are not persuaded by defendant's argument that his failure to attach affidavits from any potential witnesses should be excused because he is indigent, incarcerated, and at the mercy of volunteers to help him locate witnesses. Relief under the Act is available only to persons who are "imprisoned in the penitentiary." 725 ILCS 5/122-1(a) (West 2018). Consequently, the vast majority of postconviction petitions are filed by defendants who are indigent and incarcerated. Defendant's status as a prisoner does not excuse his failure to provide the required affidavits or evidentiary support for his allegations. See *People v. Harris*, 2019 IL App (4th) 170261, ¶ 19 ("Because the Act contemplates defendants seeking postconviction relief are likely to be imprisoned, we hold imprisonment, by itself, cannot excuse a defendant's failure to attach supporting material to a postconviction petition.")

¶ 45    Defendant has not provided any evidence to show that his allegations are capable of objective or independent corroboration. Consequently, there is nothing in the record to support his assertions that counsel did not contact other witnesses or that, if called to testify, they would have provided information or testimony favorable to defendant. There is no proof that any such information exists. We therefore conclude that defendant's failure to comply with the pleading requirements of section 122-2 of the Act is "fatal" to his postconviction petition and alone justified the circuit court's summary dismissal. Accordingly, we need not consider whether defendant stated an arguable claim of ineffective assistance of trial counsel. *Delton*, 227 Ill. 2d at 255.

¶ 46    For these reasons, we affirm the judgment of the circuit court of Cook County summarily dismissing defendant's *pro se* postconviction petition.

¶ 47    Affirmed.