2022 IL App (1st) 211196-U
Order filed: December 29, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1196

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 17234 |
| | ) | |
| MARVEL WHITE, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  First-stage dismissal of postconviction petition is affirmed, where assertion of ineffective assistance of counsel with respect to defendant's direct appeal was not raised in defendant's *pro se* postconviction petition.

¶ 2    Defendant-appellant, Marvel White, appeals from the first-stage dismissal of his *pro se* postconviction petition. For the following reasons, we affirm.

¶ 3    The trial proceedings and the evidence presented at trial were set out in our prior order, entered upon defendant's direct appeal, and need not be fully restated here. See *People v. White*, 2020 IL App (1st) 180824-U. We therefore restate only those facts necessary to resolve this appeal, with portions of this order taken from our prior decision.

¶ 4       Defendant was charged by indictment with multiple firearm offenses. The State proceeded on two counts of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)), and two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)). Each AHC count alleged defendant had prior convictions for armed robbery and manufacture or delivery of a controlled substance. The UUWF counts alleged defendant was convicted of possession of a controlled substance.

¶ 5       Prior to trial, defendant filed a motion *in limine* requesting to present a defense of necessity. Therein, defendant contended that on October 27, 2016, he saw guns in the possession of a friend of his brother and also that at the time his brother was with that friend. Defendant then "took the guns in order to prevent an unknown gun crime with full intention of making the guns safe and turning them over to the police," but defendant was arrested before he could do so. Defendant therefore sought to present "a Necessity Defense that prevented a future shooting." At a pretrial scheduling conference, the trial court acknowledged this defense and defense counsel was asked if any witnesses would testify to support this defense. Defense counsel responded: "I've been unable to—I've been told of a couple witnesses, and I doubt I'll be able to get to them. So I just anticipate my client testifying *** and the State calling, I assume, their officers."

¶ 6       The parties also requested a pretrial conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). At that conference, the State presented a brief factual overview of the offense which included the following description of defendant's statements to the police:

> "The first time he speaks to the same arresting officer, he explains that he had a phone call, that there was going to be a shoot up at the gas station over on Pulaski and Roosevelt because his brother couldn't sell his weed so he took a cab over there and that he saw his brother was agitated so he took the guns from his brother. And he was walking. He started

to run because he knows he is a convicted felon and is not supposed to have a gun.

He is then re-interviewed by a detective and he basically makes the exact same statement acknowledging that he threw both the guns on to the railroad tracks."

Also at the Rule 402 conference, defendant made the following statement to the trial court:

"The incident that was caused, my little brother called me. He didn't tell me that -- he told me that some people put a gun to his head at the gas station. When I got there, his friend was sitting on the porch, and we were tussling. I was trying to receive the guns from them. And when I received them, I put them in my sweater pocket, and soon I turned around, the police was right there. I told my little brother like, well, what is you thinking? You know I just buried my son, my oldest son. He was 19 years old ***. I said I just buried your nephew. Like what you look like? What is you doing, and as I'm tussling and trying to get everything under control, as soon as I turned around, the police was right there. There is nothing that I could have did. I thought I was doing the right thing by trying to stop them from doing something stupid."

¶ 7    At the subsequent jury trial, Chicago police officers Daniel Jones and Antonio Herrera testified that they responded to a call of two individuals with a firearm on the 4100 block of Grenshaw Street in Chicago, on the afternoon of October 27, 2016. They then observed three people, two matching the description they had been provided and a third individual—identified in court as defendant—who had a bulge near his waistband. Defendant fled when the officers approached. The officers chased defendant to a viaduct, where he pulled two firearms from his waistband and threw them toward the elevated train tracks. One firearm, a semiautomatic, fell to the street, and the other, a revolver, landed near the tracks. Defendant continued running and was apprehended. The officers recovered both firearms, which were loaded. The State entered a

stipulation that defendant had two qualifying felony convictions for AHC and one qualifying felony conviction for UUWF.

¶ 8    During cross-examination of the officers, several objections were sustained by the trial court whereby the trial court excluded testimony on whether defendant matched the description of either of the individuals described in the dispatch call and any testimony regarding police interviews with defendant. During a sidebar following one of the objections, defense counsel explained: "I am just going to ask the officer which as written in the police reports [*sic*], I'm not going to ask what was said. Did he interview my client and was any information given as to where he got the guns without saying what that answer is." The trial court agreed with the State that no direct testimony was presented regarding police questioning of defendant, and therefore: "I think it is improper at this point in time. It [may] come out in rebuttal. It *** may come out in cross-examination. I think it's irrelevant at this time."

¶ 9    Defendant testified that he encountered his brother and his brother's friend near Grenshaw Street and Keeler Avenue in Chicago. Defendant grabbed the friend's bag, which contained two firearms, and put them in his pocket. Police officers soon arrived, the men fled, and defendant threw the firearms away. According to defendant, he was scared and trying to prevent a crime. During defendant's testimony, the trial court repeatedly sustained the State's objections to questions seeking to elicit information regarding any statements made to defendant by defendant's brother and his friend.

¶ 10    On cross-examination, defendant acknowledged he was a felon and could not possess firearms. In rebuttal, the State entered certified copies of two of his felony convictions.

¶ 11    The jury was provided a necessity defense instruction, but ultimately found defendant guilty of two counts of AHC and two counts of UUWF. The court denied defendant's motion for

new trial, which did not include any specific argument regarding the exclusion of evidence at trial supporting defendant's defense of necessity. At sentencing, the trial court merged the UUWF counts into the AHC counts and imposed concurrent terms of 11 years' imprisonment for AHC. The trial court subsequently denied defendant's motion to reconsider the sentences.

¶ 12    On direct appeal, defendant challenged his sentencing but did not raise any claims of error with respect to his trial. This court affirmed defendant's sentences in an order entered in 2020. *White*, 2020 IL App (1st) 180824-U, ¶ 2.

¶ 13    Pursuant to the Post-Conviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq*. (West 2020)), defendant thereafter filed a *pro s*e postconviction petition contending that: (1) the trial court's evidentiary rulings improperly impeded defense counsel's ability to develop and present the defense of necessity in violation of defendant's constitutional rights to due process, a fair trial and to confront the witnesses against him, and (2) defense counsel provided ineffective assistance of counsel at trial by failing to present additional evidence in support of the necessity defense. The petition was supported by attachments including subpoenas, police interview notes, police reports with notes recording the interviews between police officers and defendant, Chicago Office of Emergency Management and Communications reports, and a Chicago Police Department inventory sheet.

¶ 14    Defendant's postconviction petition was summarily dismissed at the first stage of proceedings in a written order entered on February 26, 2021. Defendant filed a late notice of appeal on October 5, 2021, which this court allowed the same day.

¶ 15    The Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 (West 2020). At the first stage of a postconviction proceeding, the circuit court

independently reviews the defendant's petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). A petition should be summarily dismissed as frivolous or patently without merit only when it "has no arguable basis in either fact or law." *Id*. at 11-12; see also *People v. Tate*, 2012 IL 112214, ¶ 9 ("the threshold for survival [is] low"). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. Fanciful factual allegations are those which are "fantastic or delusional" and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id*. at 16-17.

¶ 16    We review the summary dismissal of a postconviction petition *de novo*. *Tate*, 2012 IL 112214, ¶ 10. Thus, we review the circuit court's judgment rather than the reasons for its judgment. *People v. Collier*, 387 Ill. App. 3d 630, 634 (2008).

¶ 17    On appeal, defendant does not rely upon either of the arguments he explicitly included in his postconviction petition. His briefs on appeal do not specifically explain why this is so, but it is possible that defendant recognizes it is at least arguable these issues could and should have been raised on direct appeal. It is axiomatic that a postconviction petition is " 'not designed to provide a general review of all trial errors nor to substitute for direct appeal.' [Citation.]" *People v. Haynes*, 192 Ill. 2d 437, 460-61 (2000). As such, "issues that could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues that have previously been decided by a reviewing court are barred by *res judicata." People v. Harris*, 224 Ill. 2d 115, 124-25 (2007). In any case, having failed to assert the arguments raised below on appeal, they have been forfeited. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 18    Instead, on appeal defendant contends that "because the petition, supported by the record, sets forth a claim that the trial court erred by excluding White's testimony, with an arguable basis in law and fact, it necessarily follows that the petition *implicitly* makes out a claim of ineffective assistance of appellate counsel for failure to raise these issues earlier." (Emphasis added.) As the State correctly notes, however, and as defendant concedes, this argument was not *specifically* raised below in the *pro se* postconviction petition.

¶ 19    The Act specifically provides that a postconviction petition "shall * * * clearly set forth the respects in which defendant's constitutional rights were violated." 725 ILCS 5/122-2 (West 2020). The Act also provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2020). As such, it is well-recognized that "claims not raised in a petition cannot be argued for the first time on appeal," and this court may not overlook the language contained in section 122-3 of the Act and address claims raised for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505-06 (2004).

¶ 20    While defendant concedes that he did not specifically raise a claim of ineffective assistance of appellate counsel below, he contends that the language of his petition, when "liberally construed," encompasses his current argument regarding the purported ineffectiveness of appellate counsel. We disagree.

¶ 21    A defendant's *pro se* status is not an excuse for the failure to comply with the requirements of the Act. *Jones*, 213 Ill. 2d at 505–06; *People v. Vilces*, 321 Ill. App. 3d 937, 939-40 (2001). In addition, and even in light of the low threshold and liberal construction applicable at the first stage, claims that were at best *implicitly* raised below may not be raised on appeal. *People v. Cole*, 2012 IL App (1st) 102499, ¶¶ 11-16; *People v. Reed*, 2014 IL App (1st) 122610, ¶ 63 (appellate court should not recognize "a nonspecific claim of ineffective assistance of appellate counsel that is not

- 7 -

clearly set forth in the petition"); *Jones*, 213 Ill. 2d at 508 (appellate court is not free to excuse an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition).

¶ 22    Therefore, we find defendant's claim of ineffective assistance of appellate counsel, raised for the first time on appeal, to be barred by section 122-3 of the Act. As our supreme court has recognized: "This does not leave persons in defendant's position without a remedy. *** If defendant believes that he has a meritorious claim of ineffective assistance of appellate counsel, he may seek leave of court to file a successive petition." *People v. Harris*, 224 Ill. 2d 115, 134, 862 N.E.2d 960, 972 (2007)

¶ 23    For the foregoing reasons, we affirm the summary dismissal of defendant's postconviction petition.

¶ 24    Affirmed.