2023 IL App (1st) 210943-U
Order filed June 28, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 16625 |
| | ) | |
| SERGIO BECERRA, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's summary dismissal of defendant's postconviction petition is affirmed where defendant failed to present the gist of a constitutional claim that he did not understand the terms of his plea agreement or that his trial counsel misadvised him about the terms of his guilty plea.

¶ 2     Defendant Sergio Becerra appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant contends his petition stated

the gist of a constitutional claim that his guilty plea was not knowingly, intelligently, and voluntarily made because he did not understand the terms of the plea agreement when he pled guilty. Defendant also contends his trial counsel rendered ineffective assistance because counsel misadvised him that he was pleading guilty to one count and failed to explain he was pleading guilty to two separate counts with consecutive sentences. For the reasons below, we affirm.

¶ 3    Defendant was charged with eight counts of attempted first degree murder and two counts of aggravated battery for shooting and injuring Emmanuel Roa and Raul Negron with a firearm. Six of the attempted first degree murder counts alleged defendant personally discharged a firearm while committing the offense. Two counts alleged defendant caused great bodily harm to the victims, and two counts alleged he caused them permanent disfigurement.

¶ 4    On November 20, 2018, trial counsel informed the court that he received an offer from the State and that there was "a strong probability" defendant would accept the offer. Counsel requested a continuance to "discuss the particulars with my client." Counsel asked to return to court on November 29 "for plea."

¶ 5    On November 29, 2018, the prosecutor informed the court that the parties had reached an agreement "on Count 9 and Count 10." Defense counsel stated, "[t]hat's correct." The prosecutor further stated, "it would be nine years on each count, it would be consecutive, for a total of 18 at 85%." The following colloquy then occurred:

        "THE COURT: Mr. Becerra, Count 9 reads that on or about the date of September

        28th, 2016, you committed the offense of aggravated battery in that, in committing the

        battery, you knowingly discharged a firearm other than a machine gun or a firearm

- 2 -

equipped with a silencer, and you caused injury to Emmanuel Roa, that's R-o-a, to wit, you shot Emmanuel Roa about the body.

Count 10 reads aggravated battery also. The same date of September 28, 2016, that you, in committing a battery, knowingly discharged a firearm other than a machine gun or firearm equipped with a silencer, and you caused injury to Raul Nigron, to wit, you shot Raul Nigron about the body.

Do you understand the charges against you, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: How do you plea on these charges, guilty or not guilty?

THE DEFENDANT: Guilty."

¶ 6 The court admonished defendant that by pleading guilty, he was giving up his right to a jury trial and bench trial. Defendant confirmed he understood and had signed a jury waiver form. The court further admonished defendant that he was giving up his rights to see and hear the witnesses testify in court, to question the witnesses, to subpoena and call witnesses to testify at trial, and to have the State prove the charges against him beyond a reasonable doubt. Defendant confirmed he understood.

¶ 7 The trial court continued the admonishments, as follows:

"THE COURT: These are Class X felonies where you're looking at 6 to 30 years in the penitentiary. Because there's multiple victims, they have to run consecutively, so essentially, you're looking at 12 to 60 years in the penitentiary; be fined $25,000; and you'd be on a period of three years mandatory supervised release, commonly known as parole upon being discharged from the penitentiary in this matter.

Probation is not [a]n option because of the charge.

Do you understand the range of sentencing possibilities you face right now, sir?

THE DEFENDANT: Yes.

THE COURT: Has there been any force, threats or promises to get you to plead guilty today?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will?

THE DEFENDANT: Yes.

THE COURT: Sir?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: 19.

THE COURT: How far did you go in school?

THE DEFENDANT: I just recently graduated high school, in August.

THE COURT: Did you have an occasion to talk to your attorney about your decision to plead guilty today?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with how your attorney has represented you?

THE DEFENDANT: Yes, your Honor."

¶ 8 The prosecutor informed the court that defendant was 17 years old at the time of the offense. The prosecutor then provided the following factual basis for the plea:

"If this matter proceeded to trial, the State would call Emmanuel Roa and Raul Nigron who would testify and identify the Defendant in open court that on September 28th, 2016, at approximately 11:51 p.m., near 4708 South Kedvale in Chicago, Mr. Roa and Mr. Nigron were at the Illinois Bar and Grill, and they stepped outside to smoke after eating and playing pool.

As Mr. Nigron reached into - - inside the car to get out a cigarette, he observed the Defendant dressed in a black hooded sweatshirt fidgeting with his hands. Mr. Roa observed the Defendant darting up to the car and pull out a firearm, yell – and yelled to Mr. Nigron – Mr. Roa yelled to Mr. Nigron to get away.

The Defendant pulled out a black handgun and pulled the trigger, shooting Emmanuel Roa in the face and Raul Nigron in the buttocks as Mr. Nigron ran away.

Both police officers and ambulance arrived, both victims were transported to Mt. Sinai Hospital for treatment.

The State would also present testimony from Detective Graves of the Chicago Police Department who would testify and identify the Defendant in open court that through their investigation, they learned that the shooter went by a name of KK and had a first name of Sergio.

A photo array was put together and Emmanuel Roa positively identified the Defendant in the photo array at the hospital. The Defendant was subsequently placed into custody."

¶ 9    Defense counsel stipulated to the factual basis. The trial court found defendant understood the nature of the charges, possible penalties, and his rights. The court found the factual basis

supported the plea and that defendant entered his plea freely, voluntarily, and intelligently. The court found defendant guilty of "Count 9 and Count 10."

¶ 10    When discussing defendant's criminal history, defense counsel informed the court that defendant previously pled guilty to a charge of unlawful use of a weapon but subsequently rescinded the plea, and the charge was still pending before another judge. When the court asked about the injuries to Roa and Negron, the two victims in this case, the prosecutor stated that Roa suffered a "significant" gunshot wound to the face which passed through the bridge of his nose and caused "permanent brain damage." Negron had a bullet that remained lodged in his leg. The prosecutor stated that she spoke with both victims about an offer in December 2017. The prosecutor stated, and defense counsel agreed, that they had been "negotiating this case for a while." They also agreed the shooting was gang related.

¶ 11    Defendant confirmed he signed a waiver of a presentence investigation report. Defendant told the court that he had "done a lot at juvenile." Counsel explained that, while in custody, defendant received his high school diploma and barber certificate.

¶ 12    The trial court sentenced defendant to nine years' imprisonment "on each count." The court noted the sentences had to run consecutively, for an aggregated term of 18 years. The court explicitly asked defendant if he had any questions about his sentence. Defendant replied, "[n]o, your Honor." The court advised defendant of his right to appeal, and that he would have to file a motion to withdraw his guilty plea within 30 days prior to filing an appeal. The State nol-prossed the remaining charges. The record further shows the State impounded physical evidence including a firearm with a magazine and 2 bullets, a gun box, holster, gun lock, 2 empty magazines, 5 live rounds, 11 fired cartridge cases, an expended shell casing, and a test-fired expended shell casing.

¶ 13    On December 13, 2019, more than a year after his guilty plea hearing, defendant filed a *pro se* motion to reduce his sentence. Defendant asserted his sentence should be reduced because he was a juvenile at the time of the offense and his mind was not "fully functional" at that time. Defendant stated that he had since improved as a person and citizen, graduated from high school, and was enrolled in college classes.

¶ 14    The trial court found that it lacked jurisdiction to consider defendant's untimely motion. In addition, the court stated that defendant's request was improper because the court could not reconsider the sentence in light of rehabilitation achieved after being incarcerated. The court noted defendant's sentence was negotiated between the parties. Accordingly, the court denied defendant's motion.

¶ 15    On March 10, 2021, defendant filed the instant *pro se* postconviction petition under the Act. Therein, defendant alleged his trial counsel rendered ineffective assistance because counsel failed to contact and investigate one of the victims who never implicated defendant as the person who shot him. Defendant claimed counsel was ineffective for allowing him to plead guilty to two counts of aggravated battery when one of the victims told police he did not know who shot him. Defendant argued that if counsel had investigated both victims' statements, he would have noted they were either "contradicting, conflicting or corroborating." In addition, defendant claimed counsel should have filed a motion to quash arrest and suppress evidence on one of the counts because the victim did not know who shot him. Defendant stated that if counsel had been effective, defendant would have gone to trial rather than pleading guilty, and there is a reasonable probability he would not have been convicted of two counts of aggravated battery.

¶ 16    Defendant also alleged that the two offenses occurred at the same time during a single course of conduct and, therefore, under the one-act, one-crime rule, his sentences should have run concurrently rather than consecutively. Defendant claimed his counsel was ineffective for not making this argument in court.

¶ 17    Defendant attached to his petition his own affidavit in which he averred that, "prior to accepting this plea deal," he repeatedly asked counsel to investigate and contact the victim who did not identify him as the shooter. Defendant claimed the victims' statements were contradictory because one victim identified him as the shooter but the other did not. Defendant further stated, "[m]y attorney had told me that I was taking a plea deal to one count, now I see that it was two counts that ran consecutive. Had I known this I would have never took a plea deal." Defendant claimed there was no reason for counsel to allow him to plead guilty "to this count in particular" where counsel did not investigate all the evidence in the case.

¶ 18    The circuit court summarily dismissed defendant's postconviction petition. The court found that the record contradicted defendant's claims that counsel was ineffective for failing to investigate one of the victims and allowing defendant to plead guilty to two counts where one of the victims did not identify him as the shooter. The court pointed out that the factual basis for the guilty plea stated that both victims would testify at trial and identify defendant in court, thereby implicating defendant as the gunman who shot them both. The court further stated that decisions regarding whether to file motions to quash arrest and suppress evidence are matters of trial strategy that do not support claims of ineffective assistance of counsel. Nevertheless, the evidence showed defendant's arrest was lawful. The court concluded that defendant failed to establish that there was any deficiency in counsel's advice.

¶ 19    In addition, the court found that defendant's claim regarding the one-act, one-crime principle was incorrect. The court noted there were two victims in the case, each of whom was severely injured. Therefore, defendant had to be convicted of two counts. The court concluded that defendant's allegations were frivolous and patently without merit and summarily dismissed his postconviction petition.

¶ 20    On appeal, defendant contends his petition stated the gist of a constitutional claim that his guilty plea was not knowingly, intelligently, and voluntarily made because he did not understand the terms of the plea agreement when he pled guilty, thereby violating his right to due process. Defendant also contends his trial counsel rendered ineffective assistance because counsel misadvised him that he was pleading guilty to one count and failed to explain he was pleading guilty to two separate counts with consecutive sentences.

¶ 21    The Act provides a three-stage process whereby a prisoner can file a petition asserting that his conviction was the result of a substantial denial of his federal or state constitutional rights. 725 ILCS 5/122-1 (West 2020); *People v. Knapp*, 2020 IL 124992, ¶ 43. We review the circuit court's first stage summary dismissal of defendant's postconviction petition *de novo. People v. Hatter*, 2021 IL 125981, ¶ 22. Under this standard, the reviewing court makes its own independent assessment of the allegations and is " 'free to substitute its own judgment for that of the circuit court to formulate the legally correct answer.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)).

¶ 22    Our supreme court has held that a postconviction petition may be summarily dismissed as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis when it is based on fanciful

factual allegations or an indisputably meritless legal theory, such as a theory that is completely contradicted by the record. *Id.* At the summary dismissal stage, all well-pled allegations in the petition must be taken as true unless they are contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82. A postconviction proceeding is not a substitute for a direct appeal but, instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 23   Defendant first contends his petition presented the gist of a claim that his guilty plea was not knowing and voluntary because he did not know he was pleading guilty to two counts and that the sentences would run consecutively. Defendant acknowledges that, in his postconviction petition, he framed the allegation as a claim of ineffective assistance of counsel. He argues, however, that the facts in his petition also support a claim that he did not understand the terms of the plea agreement before he entered his guilty plea.

¶ 24   Defendant raises three points in support of this argument. First, defendant argues he was 19 years old at the time of his plea and unfamiliar with the court system. He had no prior experience in adult criminal court and his only experience in juvenile court was a rescinded guilty plea. Defendant points out that in his 2019 motion to reduce sentence, he explained that his mind was not "fully functional" at the time of the offense due to being a juvenile. He claims that explanation supports his allegation here that he did not understand the terms of the plea agreement.

¶ 25   Second, defendant claims the trial court violated Illinois Supreme Court Rule 402(b) (eff. July 1, 2012) when it failed to confirm the terms of the plea agreement "personally" with him in open court. Defendant argues that the court failed to explain the terms of the agreement and failed to confirm those terms by questioning him before accepting his guilty plea. Defendant states that

he is not challenging the trial court's admonishments but, instead, is arguing that the court's failure to comply with Rule 402 shows his guilty plea was not knowingly and voluntarily made.

¶ 26    Third, defendant argues that, even if the trial court partially complied with Rule 402, the admonishments used "legal terms" that he "may not have understood" due to his inexperience, and because his agreement was based on what defense counsel had explained to him. Defendant has not identified the "legal terms" he "may not have understood."

¶ 27    Finally, defendant argues his "serious allegation" warrants the appointment of counsel because he has not yet had the opportunity to have counsel assist him with raising his challenge to the knowing and voluntary nature of his guilty plea. Defendant asserts: (1) the trial court failed to adequately admonish him about his right to have counsel assist him with drafting a motion to vacate his guilty plea; (2) he never filed a direct appeal and, thus, did not have counsel to argue he was not properly admonished of his right to have counsel assist him with a motion to vacate his plea; and (3) he filed his postconviction petition *pro se* and the circuit court summarily dismissed it without appointing him counsel.

¶ 28    The State responds that defendant's allegation that he did not understand the terms of the plea agreement is rebutted by the record which clearly shows defendant agreed to plead guilty to two counts of aggravated battery in exchange for consecutive prison sentences of 9 years, for a total of 18 years' imprisonment to be served at 85%. The State argues that defendant responded to all the trial court's questions, agreed that he understood the terms of the agreement, and did not ask for clarification even when the court gave him opportunities to do so. The State further argues: (1) that defendant's age and lack of court experience did not render his plea involuntary; (2) the record shows the trial court substantially complied with Rule 402(b); and (3) defendant failed to

cite any precedent that his status as a layman undermined his understanding of the principles that were conveyed to him.

¶ 29    Under our *de novo* review, this court must first determine whether defendant's allegation that he did not understand the terms of the plea agreement, based on his three arguments above, was raised in his *pro se* postconviction petition or whether he is raising it for the first time on appeal and, thus, it is waived. The Act dictates that defendant's postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2020). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2020). It is well-established that defendant is precluded from raising an issue on appeal that was not alleged in the postconviction petition he filed in the circuit court. *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 30    The question on appeal from the dismissal of a postconviction petition is whether the allegations in the petition, when liberally construed and taken as true, are sufficient to invoke relief under the Act. *Id.* The allegations, although limited in detail and liberally construed, "must nevertheless *clearly* set forth *the respects* in which petitioner's constitutional rights were violated." (Emphases in original.) *People v. Reed*, 2014 IL App (1st) 122610, ¶ 57 (2014). This court may not excuse an appellate waiver caused by defendant's failure to include issues in his postconviction petition. *Jones*, 213 Ill. 2d at 508; *Reed*, 2014 IL App (1st) 122610, ¶ 43.

¶ 31    Here, when liberally construed, we find that defendant's *pro se* postconviction petition did not raise an allegation that his guilty plea was not knowingly and voluntarily made because he did not understand the terms of the plea agreement. Defendant did not allege any facts in his petition regarding his age or his lack of familiarity and experience with the court system. Defendant did

not state that his mind was not "fully functional" at the time of the offense due to being a juvenile. Defendant raised that claim in his 2019 motion to reduce sentence. He did not raise it in the instant postconviction petition.

¶ 32     Nor did defendant raise any facts in his petition regarding the trial court's admonishments at the plea hearing. Defendant made no allegation that the court failed to comply with Rule 402, or that it erred in any other manner during the plea hearing. Similarly, defendant's petition did not state any claim that the court used legal terms he did not understand. Defendant's assertion on appeal that he "may not have understood" some unidentified legal terminology is vague and speculative.

¶ 33     We therefore conclude that defendant failed to raise an allegation in his postconviction petition that he did not understand the terms of the plea agreement. Defendant has raised this issue for the first time on appeal. Accordingly, the issue is waived, and this court is precluded from considering it. *Jones*, 213 Ill. 2d at 508.

¶ 34     Defendant next contends his *pro se* postconviction petition raised the gist of a claim that his guilty plea was not knowingly and intelligently made because his trial counsel gave him erroneous advice about the terms of the plea agreement, thereby rendering ineffective assistance. Defendant claims counsel misadvised him that he was pleading guilty to one count and failed to explain he was pleading guilty to two separate counts with consecutive sentences. Defendant acknowledges the trial court admonished him about the charges. He argues, however, that the record does not clearly show whether he thought he was pleading guilty to only one count, or whether he understood that the court's admonishments "in legalese" were different from what

counsel had told him. Defendant argues he was prejudiced by counsel's erroneous advice because he would not have accepted the plea offer if he knew it was for two counts that ran consecutively.

¶ 35    The State responds that defendant's claim is rebutted by the record which shows defendant was present in court when the prosecutor and trial counsel informed the court that the parties had reached a plea agreement for two counts with 9 years for each count, to be served consecutively, for a total of 18 years' imprisonment. The State points out that defendant confirmed for the court that he had discussed his decision to plead guilty with counsel and was satisfied with counsel's representation. The State further argues that defendant's conclusory statement that he would not have pled guilty is insufficient to establish prejudice. Instead, defendant was required to show that a decision to reject the plea offer would have been rational under the circumstances, which he failed to do. The State asserts that, if there had been a trial, both victims would have testified defendant shot them and, if convicted, defendant faced significantly higher sentences between 21 years and life imprisonment for each count. The State argues that defendant received a windfall by pleading guilty to the least serious offenses and receiving sentences at the low end of the range.

¶ 36    Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29. To support a claim of ineffective assistance of trial counsel, defendant must demonstrate that counsel's representation was deficient, and as a result, he suffered prejudice that deprived him of a fair proceeding. *Strickland*, 466 U.S. at 687. Specifically, defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Veach*, 2017 IL 120649, ¶ 30. However, at the first stage of

postconviction proceedings, allegations of ineffective assistance of counsel are judged by a lower pleading standard, and a petition raising such claims may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 37    We note that, in his postconviction petition, defendant alleged counsel was ineffective because counsel failed to investigate one of the victims who could not identify him as the shooter, and counsel failed to argue that the two counts of aggravated battery with consecutive sentences should have been one count with one sentence under the one-act, one-crime doctrine because both counts were based on the same physical act. Defendant has abandoned those claims on appeal and, instead, now claims counsel misadvised him about the terms of the plea agreement. For factual support of his argument, defendant relies on two sentences in his affidavit attached to his petition where he stated, "[m]y attorney had told me that I was taking a plea deal to one count, now I see that it was two counts that ran consecutive. Had I known this I would have never took a plea deal."

¶ 38    However, defendant contradicted this statement elsewhere in his petition. In his one-act, one-crime argument, defendant stated,

> "I asked my counsel to see if he can get both counts ran concurrent due to the fact that the evidence supports one conviction instead of two. But counsel never attemted [*sic*] to secure less time. Counsel has a duty to assist me, by him failing to attempt to secure less time renders him ineffective."

¶ 39    Defendant's petition therefore establishes that counsel told him that the plea agreement was for two counts and that the sentences would run consecutively. Defendant claimed in his petition that he specifically asked counsel to try to have the sentences run concurrently, but counsel

never attempted to do so and, thus, was ineffective. Because defendant contradicted himself within his petition, his claim that counsel misadvised him of the terms of the plea agreement is frivolous as it has no arguable basis in law or in fact. *Hodges*, 234 Ill. 2d at 16. Consequently, defendant has not presented an arguable claim that counsel provided ineffective assistance which caused his guilty plea to be unknowingly and involuntarily made. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 40 In addition, the record shows that, at the plea hearing, the trial court clearly explained the two separate counts to defendant as "Count 9" for committing the offense of aggravated battery by shooting and injuring Emmanuel Roa, and "Count 10" for aggravated battery for shooting and injuring Raul Negron. Defendant confirmed he understood the charges against him. The court then asked defendant, "[h]ow do you plea on these charges, guilty or not guilty?" Defendant answered, "[g]uilty." Shortly thereafter, defendant confirmed with the court that he had discussed his decision to plead guilty with counsel, and that he was satisfied with counsel's representation. Hence, the record also contradicts defendant's claim that he did not know he was pleading guilty to two separate counts of aggravated battery.

¶ 41 For these reasons, we conclude that defendant's *pro se* postconviction petition failed to present the gist of a constitutional claim that his guilty plea violated due process because it was not knowingly, intelligently, and voluntarily made. The allegations in defendant's petition had no arguable basis in law or in fact. Accordingly, the circuit court's summary dismissal of defendant's postconviction petition was proper.

¶ 42 We therefore affirm the judgment of the circuit court of Cook County summarily dismissing defendant's *pro se* postconviction petition.

¶ 43 Affirmed.