NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220975-U

NO. 4-22-0975

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| PATRICK IVAN BROWN, | ) | No. 01CF2720 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted the Office of the State Appellate Defender's motion to
withdraw as counsel and affirmed the circuit court's judgment, as no issue of
arguable merit could be raised on appeal.

¶ 2    Defendant, Patrick Ivan Brown, appeals from the circuit court's dismissal of his

motion for leave to file a successive postconviction petition. On appeal, the Office of the State

Appellate Defender (OSAD) moves to withdraw as counsel on the ground no issue of arguable

merit can be raised. Defendant has filed a response to OSAD's motion. We grant OSAD's

motion and affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4    The appellate court has set forth the underlying facts of this case in defendant's

prior appeals. See *People v. Brown*, No. 2-04-0323 (2006) (unpublished order under Illinois

Supreme Court Rule 23); *People v. Brown*, 2014 IL App (2d) 121310-U; *People v. Brown*, 2016

IL App (2d) 141058-U (unpublished summary order under Illinois Supreme Court Rule 23(c)); *People v. Brown*, 2017 IL App (2d) 160211-U (unpublished summary order under Illinois Supreme Court Rule 23(c)). Accordingly, we will recite only those facts necessary to resolve the issues presented in this appeal.

¶ 5        On February 6, 2002, defendant and Brian Johnson were charged by superseding indictment with three counts of first degree murder. 720 ILCS 5/9-1(a)(2), (a)(3) (West 2000). Count II alleged the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 730 ILCS 5/5-5-3.2(b)(2) (West 2000). Before trial, defense counsel filed a motion to suppress statements defendant made to police.

¶ 6        On April 5, 2002, the circuit court conducted a hearing on defendant's motion to suppress. The State presented the testimony of Detective Paul Swanberg. Swanberg indicated on October 20, 2001, he and Detective Diane Krigbaum interviewed defendant about the ongoing investigation of the murder of Britton Tullock. According to Swanberg, during the interview, defendant had no observable issues while walking or speaking to the detectives, nor did defendant appear to be under the influence of any drugs. Defendant provided detectives with his biographical information and arrest history. When asked if defendant had ever been advised of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant answered "he [had] not but he was aware of them, [and] understood what they were." Swanberg asked defendant if he could read, write, and understand English. Defendant responded that he could. Swanberg then provided defendant with a "rights form" prepared by the Rockford Police Department detailing his *Miranda* rights. Defendant read a portion of the rights form aloud. Swanberg noted defendant did not slur his speech when speaking. Thereafter, Swanberg read aloud to defendant four sentences from the rights form outlining his rights. Defendant verbally indicated he understood

- 2 -

those rights and initialed each of those sentences. Defendant then read aloud a sentence stating, "I understand these rights," he indicated he did in fact understand his rights and that he would speak with the detectives, and he signed the bottom of the rights form. Swanberg testified defendant never indicated he had any condition that would impair his ability to "comprehend what was going on."

¶ 7        Following argument from the parties, the circuit court denied defendant's motion to suppress statements.

¶ 8        On November 18, 2003, the circuit court conducted a five-day jury trial. The State presented the testimony of Detective Diane Krigbaum. Krigbaum testified that on October 20, 2001, she and Swanberg met with defendant to discuss the ongoing murder investigation of Tullock. During the interview, defendant appeared lucid, provided detectives with information about his background, and indicated he understood his rights. Defendant told detectives "he was sorry that it happened" and defendant had "tried to knock out [Tullock] but that [Tullock] was strong and was making gestures as if he was reaching inside his coat, and [defendant] thought [Tullock] possibly had a gun." Defendant provided a statement to detectives, which Swanberg typed. After the statement was completed, Swanberg read the statement aloud to defendant and provided him with an opportunity to make any necessary corrections. Krigbaum testified the only change defendant wished to make was to correct a spelling error on the second page of the written statement. Defendant initialed each paragraph and signed each page of the four-page written statement, indicating he acknowledged it was his statement and it was true.

¶ 9        On cross-examination, Krigbaum stated defendant was cooperative and responsive during questioning. Defendant did not appear disoriented and spoke calmly throughout the process.

¶ 10    The jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 2000)) and that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 730 ILCS 5/5-5-3.2(b)(2) (West 2000).

¶ 11    On January 23, 2004, the circuit court conducted a sentencing hearing. The parties stipulated to the admission of a report written by Megan Smick, a licensed clinical psychologist. Smick's report detailed an incident in 1995 in which defendant was struck in the head with a cinder block, fracturing his skull and causing brain hemorrhaging. Defendant had been diagnosed with major depression and used cocaine daily to alleviate his headaches. Smick noted defendant had "many cognitive strengths," *inter alia*, "attention, concentration and mental processing." Defendant also had some cognitive weaknesses, including impaired visual perception and visual-motor integration. Smick indicated defendant's cognitive weaknesses, lack of impulse control, depression, and anger management issues were consistent with his brain injury. Following argument from the parties, the court sentenced defendant to life imprisonment.

¶ 12    On direct appeal, defendant argued the circuit court erred in allowing certain autopsy photographs into evidence and claimed prosecutorial misconduct during closing arguments. The appellate court affirmed. See *People v. Brown*, No. 2-04-0323 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13    In 2007, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) arguing, in part, trial counsel prevented defendant from testifying at trial. Additionally, citing Smick's report, defendant argued trial counsel was ineffective for failing to raise defendant's unfitness to stand trial. The circuit court appointed counsel and advanced defendant's petition to second-stage proceedings. Attached to the amended postconviction petition was defendant's signed affidavit,

in which defendant recalled a discussion with his trial attorneys about his right to testify. According to defendant, when trial counsel met with him to prepare for his upcoming trial testimony, defendant could not "remember what had happened," and that he had "lost it." Defendant told trial counsel he was "hear[ing] things" and panicked during the forensic pathologist's testimony.

¶ 14 The circuit court dismissed defendant's amended postconviction petition, noting Smick's report did not create a *bona fide* doubt as to defendant's fitness to stand trial. Moreover, defendant's claim regarding his right to testify was rebutted by the court's admonishments during trial. The appellate court affirmed, finding the circuit court's admonishments positively rebutted defendant's claims. See *Brown*, 2014 IL App (2d) 121310-U, ¶ 11.

¶ 15 In 2014, defendant filed a motion for leave to file a successive postconviction petition. Defendant realleged his prior claims of ineffective assistance of trial counsel and alleged ineffective assistance of appellate counsel on direct appeal, as well as postconviction counsel. The circuit court denied defendant's motion to file a successive postconviction petition, finding, "The petition just rehashes matters previously litigated in [defendant's] first post-conviction petition, and it alleges claims that are not of a constitutional nature." On appeal, OSAD filed a motion to withdraw, which the appellate court granted. See *Brown*, 2016 IL App (2d) 141058-U (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16 On September 30, 2015, defendant filed a second motion for leave to file a successive postconviction petition. Defendant alleged new evidence had been discovered and attached an affidavit from Johnny Borizov. In his affidavit, Borizov stated he observed Tullock attempting to sell defendant revolvers on various occasions. The circuit court denied defendant's motion for leave to file a successive postconviction petition, concluding defendant failed to

"demonstrate cause or prejudice, or actual innocence." On appeal, OSAD moved to withdraw, which the appellate court granted. See *Brown*, 2017 IL App (2d) 160211-U (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17    On July 21, 2022, defendant filed a motion for leave to file, for the third time, the successive postconviction petition at issue in the present case. Defendant alleged he suffered from seizures that invalidated the *Miranda* waiver preceding his confession and rendered him unfit to stand trial. Specifically, defendant maintained his due process rights were violated because he was allowed to proceed in this diminished state. Defendant acknowledged he "knew he had grand mal seizures back during [the] pre-trial discovery stage." However, in 2013, he learned he also suffered from partial complex seizures. Defendant discovered the symptoms of partial complex seizures during discovery in a civil lawsuit. Thus, he argued, he could not have raised the issue prior to the discovery disclosure. Defendant reasoned he had a seizure "[j]ust prior to or during" the interrogation because he could not recall the interrogation.

¶ 18    Attached to his motion, defendant provided his own affidavit and an affidavit from fellow inmate Steven Zirko. The affidavits averred defendant could not retain information. Defendant also attached various medical records. The records showed defendant had a history of seizures following his brain injury in 1995. In 1996, defendant reported a " 'post trauma epileptic' attack," which lasted approximately 20 minutes and was more intense than previous seizures. In an Illinois Department of Corrections outpatient progress note, defendant reported a recent "mild" seizure and characterized his seizures as "complex partial seizures." A written notation appears to indicate defendant "hasn't had grand mal [seizures] since 1998." A report from Pontiac Correctional Center medical director Dr. Andrew Tilden indicated defendant's seizures are "well controlled on Keppra," an anticonvulsant medication. Dr. Tilden's report also

provided a description of postictal states. A postictal state, Dr. Tilden asserted, "is the period that begins when a seizure subsides and ends when the patient returns to his baseline." Postictal state symptoms include "poor attention and concentration, lowered interactive and verbal skills and poor short-term memory."

¶ 19　　　　　On August 4, 2022, the circuit court denied defendant leave to file a third successive postconviction petition, concluding defendant failed to demonstrate cause, prejudice, or actual innocence. The court asked the State to prepare a written order, which the State agreed to do. Defendant filed a motion to reconsider, which the court denied on September 1, 2022. The State again prepared a written order at the court's request, denying defendant's motion to reconsider "for the reasons stated on the electronic record." The record indicates defendant sent a letter to the Winnebago County circuit clerk in October 2022, asking if the clerk received his motion to reconsider. Defendant then filed a motion for leave to file a late notice of appeal, which this court granted.

¶ 20　　　　　This appeal followed.

¶ 21　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　　OSAD argues the appeal of this case presents no potentially meritorious issues for review. Specifically, OSAD identified the following potential issues for review: (1) whether defendant's petition arguably made a *prima facie* showing of cause and prejudice; (2) whether defendant's claims are barred by *res judicata*; and (3) whether the State improperly offered substantive input at the leave-to-file stage of proceedings.

¶ 23　　　　　　　　　A. *Prima Facie* Showing of Cause and Prejudice

¶ 24　　　　　OSAD contends no meritorious argument can be made the circuit court erred in denying defendant leave to file a successive postconviction petition. We agree.

¶ 25    The Act provides a means to collaterally attack a criminal conviction based on a substantial denial of a defendant's state or federal constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. Beaman*, 229 Ill. 2d 56, 71, 890 N.E.2d 500, 509 (2008). Issues adjudicated on direct appeal or a previous collateral proceeding are barred by *res judicata*, and issues that could have been raised but were not are forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. The Act contemplates the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 456, 793 N.E.2d 609, 619 (2002). A defendant must obtain leave from the circuit court to file a successive petition under the Act. 725 ILCS 5/122-1(f) (West 2022).

¶ 26    To obtain leave, a defendant must do one of the following: (1) show cause and prejudice for the failure to raise a claim in his earlier petition or (2) show a " 'fundamental miscarriage of justice' *** [which] requires a [defendant] to make a persuasive showing of 'actual innocence.' " *People v. Prante*, 2023 IL 127241, ¶ 59 (quoting *People v. Taliani*, 2021 IL 125891, ¶ 55, 174 N.E.3d 503). Defendant's motion does not make a claim of actual innocence.

¶ 27    Showing cause requires identifying an objective factor that impeded the defendant's ability to raise the claim in the initial postconviction petition. *People v. Moore*, 2023 IL App (4th) 210245, ¶ 45. Showing prejudice requires the defendant to articulate how a "claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process." *Moore*, 2023 IL App (4th) 210245, ¶ 45. "[F]or a defendant to obtain leave to file a successive postconviction petition, *both* prongs of the cause-and-prejudice test must be satisfied." (Emphasis added.) *People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 19,

134 N.E.3d 348. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 38, 38 N.E.3d 1256.

¶ 28        OSAD contends, even assuming, *arguendo*, defendant could show cause regarding how his seizure disorder prevented him from waiving his *Miranda* rights, he cannot demonstrate prejudice. OSAD notes the record does not support defendant's claim that he had a partial complex seizure based on his failure to remember questioning during the interrogation. We agree.

¶ 29        While defendant claims he had a partial complex seizure based on his failure to later remember police questioning during his interrogation, he has failed to show he in fact had a seizure *during* the interview with police, or that he could not remember police questioning during, or soon after, the interview. In fact, defendant was described as "very alert, talkative, [and] cooperative" during the initial interview with detectives. Moreover, defendant has provided no expert evidence to show he suffered a seizure during the interrogation. Rather, the record reveals defendant had been using cocaine prior to the interrogation and had a history of memory loss stemming from the brain injury he sustained in 1996. The uncontradicted testimony of Krigbaum indicated defendant did not appear impaired and provided a detailed statement regarding the murder. Prior to the interview with police, defendant read parts of the rights form aloud and signed it, indicating he understood his *Miranda* rights. In addition, upon reviewing his written statement, defendant pointed out a spelling error within the statement. Accordingly, we find defendant cannot demonstrate prejudice. Because defendant cannot demonstrate an arguable showing of prejudice, the circuit court properly denied him leave to file a successive postconviction petition. See *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909 (holding both prongs of the cause-and-prejudice test must be satisfied to obtain leave).

¶ 30                                    B. *Res Judicata*

¶ 31        OSAD further contends defendant's claim he was in a "diminished mental state" during court proceedings is barred by *res judicata*.

¶ 32        Proceedings under the Act are collateral in nature and are subject to principles of *res judicata*, meaning issues already raised and decided on direct appeal or in a prior proceeding are barred. *People v. Barrow*, 195 Ill. 2d 506, 529, 749 N.E.2d 892, 907 (2001). The Act "was not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been a full review of the issues raised ***. This is so, even though the present petition attempts to change the character of the questions previously advanced and decided, by describing them in different constitutional terms." (Internal quotation marks omitted.) *Barrow*, 195 Ill. 2d at 529. A defendant cannot avoid *res judicata* by adding additional allegations encompassed by a previously adjudicated issue. *People v. Palmer*, 352 Ill. App. 3d 877, 884, 817 N.E.2d 129, 136 (2004).

¶ 33        Here, defendant's claim he was in a "diminished mental state" during the circuit court proceedings is barred by *res judicata*. Defendant has previously raised similar claims on appeal. See *Brown*, 2016 IL App (2d) 141058-U, ¶ 7 (concluding, based on Smick's report and a review of the record, that "defendant's interaction with the court did not indicate that a fitness hearing was required"). Accordingly, defendant's claim in this case is not meaningfully distinguishable from that raised on appeal stemming from his first successive postconviction petition. Therefore, because defendant's claim regarding his "diminished mental state" during the court proceedings is barred by *res judicata*, no meritorious argument can be made to the contrary on appeal.

¶ 34                              C. Improper Substantive Input

¶ 35    OSAD next contends no meritorious argument can be made the State improperly participated in the leave-to-file proceedings. We agree.

¶ 36    In *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114, our supreme court held "the State should not be permitted to participate at the cause and prejudice stage of successive postconviction proceedings." The supreme court explained, although the Act "does not expressly prohibit the State's input, we find that the Act contemplates an independent determination by the circuit court. The motion for leave to file is directed to the court, and it is the court that must decide the legal question of whether a defendant has satisfied the section 122-1(f) requirement of showing cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 37    In this case, the record reflects the State played no substantive role in the proceedings. Rather, in denying defendant's motion for leave to file a successive postconviction petition, the circuit court made an independent determination that defendant's petition did not raise a claim of actual innocence and "fail[ed] to meet the cause or prejudice prong." Afterward, the State, upon the court's request, simply performed the ministerial act of preparing a written order reflecting those findings. Accordingly, we agree with OSAD, no meritorious argument can be made the State improperly participated in the leave-to-file proceedings.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the circuit court's judgment.

¶ 40    Affirmed.